DIANA M. MADSEN *vs.* METROPOLITAN LIFE INSURANCE COMPANY.

DECEMBER 11, 1959.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

PAOLINO, J. This action of the case in assumpsit was brought by the plaintiff as the beneficiary in a mortgage term policy of insurance issued by the defendant upon the

life of her husband. The case was tried before a justice of the superior court sitting with a jury and resulted in a verdict for the plaintiff for the full amount of the policy. The case is before us on the defendant's bill of exceptions. The only exceptions being pressed are to the denial of its motions for a directed verdict and a new trial.

The insured signed an application for the policy on October 13, 1954. He was examined by Dr. Patrick A. Durkin, defendant's examining physician, on October 20, 1954. The application contained a number of questions relating to the past medical history of the insured. In response to such questions he stated that he had never had any ailment or disease of the heart, or been treated for or sought advice concerning such an ailment; that he had never been a patient in or visited a hospital for observation, examination or treatment; that he never had an electrocardiogram; and that he had not consulted a physician within the past five years for any reason not mentioned above. The doctor recorded these answers in the application.

The policy, which is dated November 5, 1954, was delivered to the insured on December 1, 1954 by defendant's agent, who accepted and acknowledged receipt of the first full premium specified therein. The insured died on April 19, 1955 of acute coronary thrombosis.

The defendant refused to pay the proceeds of the policy to plaintiff because its investigation disclosed that on October 17 and 18, 1954 the insured had been treated at his home by Dr. Henry J. Klufas; that he visited this doctor's office on October 22, 1954; that on October 26, 1954 he had an electrocardiogram taken at a hospital; and that this indicated a heart involvement. The investigation also disclosed that he visited Dr. Klufas on November 18, 1954 and at other times after December 1, 1954. It is undisputed that the insured did not disclose these matters to defendant.

The defendant's refusal to pay is based on its claim that it never became liable under the policy because of the fol-

lowing provision in the application: "The Company shall incur no liability under this application until a policy has been delivered and the full first premium specified in the policy has actually been paid to and accepted by the Company during the lifetime and continued insurability of the applicant * * *." In substance defendant argues that the insured was not insurable on the date of the delivery of the policy, and that under the rule of continuing representations there are misrepresentations in the application which were material to the contingency or event upon which the policy would be payable.

At the trial in the superior court plaintiff admitted that her husband had been under the care of Dr. Klufas from October 17, 1954 to the time of his death, and that an electrocardiogram had been taken on October 26, 1954. But she testified that as far as she knew Dr. Klufas had been called to treat her husband for a general cold; that she was always with him whenever he was seen by Dr. Klufas; that before December 1, 1954 neither she nor her husband had ever been told by Dr. Klufas or anyone else that he had a heart ailment; that Dr. Klufas had not prescribed or given him any medication before that date; that she did not think her husband knew anything about his heart ailment before that time; and that Dr. Klufas did not tell them anything about the heart ailment until around the last of December.

She also testified that prior to the examination by Dr. Durkin her husband had been in good health and had been working continuously without losing any time; that on the day Dr. Durkin examined him his health was all right; that he continued to work thereafter until the date of his death; that there was no change in his condition from the time of that examination to the day the policy was delivered; and that as far as she could see there was nothing wrong with him during that period.

It is conceded that the insured in fact did have a heart involvement on October 17 and October 20, 1954. The failure of Dr. Klufas and Dr. Durkin to make a correct diagnosis on those dates was due to the fact that the symptoms were subclinical and not dramatic. Doctor Edward R. Thompson, who was called as a witness by plaintiff, testified that in his opinion the condition of the insured's heart on December 1, 1954 was better than it had been on October 17 or October 20, 1954.

Doctor Klufas, who was called as a witness by defendant, testified that he saw the insured professionally on October 17, 18 and 22; that the patient was complaining of a cold, general weakness, and pains and aches all over his body; that on those occasions he could not find too much wrong with him except a cold; that his heart and pulse were normal; and that on October 22, 1954 he suggested a complete examination and an electrocardiogram. His testimony as to when he informed plaintiff and her husband about the results of the electrocardiogram and the husband's heart ailment is in conflict with plaintiff's testimony on this point. The same is true of his testimony regarding medication. The doctor stated that plaintiff and her husband visited him at his office on November 18, 1954 and that on that day he informed them of the heart ailment. He also testified that on the same day he prescribed medication, but his office records contained no reference to support such testimony. He admitted that he was testifying solely from memory.

The defendant presented the testimony of a pharmacist indicating that two prescriptions issued by Dr. Klufas and dated October 17 and November 19, 1954 had been prepared and delivered to the insured. But there is nothing in the record indicating that he knew or was told for what ailment this medication was prescribed.

Doctor Durkin testified about his examination of the insured on October 20. He stated in substance that he gave

him a general physical examination; that he found no heart condition; and that in general he found nothing contrary to the answers given by the insured. However, he testified that there could have been a heart ailment which his examination would not have disclosed. Although it is conceded that on October 17 and 20 the insured had a heart ailment which contributed to his death, there is no serious claim that he had knowledge of his condition on those days. But, on the other hand, there is a conflict in the evidence as to whether he found out about his condition prior to December 1, 1954.

Under its exception to the denial of the motion for a directed verdict defendant contends that plaintiff has presented no evidence to prove compliance with the condition of continued insurability. The validity of this contention depends wholly upon the meaning of "continued insurability." The parties apparently agree that the provision in question constitutes a condition precedent, but they disagree on the meaning of the words "continued insurability." We are of the opinion that the use of such language has created an ambiguity. This exception, therefore, raises a question of construction as to the meaning of those words.

There is no merit in plaintiff's contention that because of defendant's admitted failure to except to the charge of the trial justice, this court in passing upon the instant motion is bound by the law given in such charge. The doctrine of the law of the case does not apply in the review and consideration of an exception to the denial of a motion for a directed verdict.

The precise question raised by the facts in this case has never been passed upon by this court. To support its contentions, defendant has cited *Mohr* v. *Prudential Ins. Co.*, 32 R. I. 177, *Chorney* v. *Metropolitan Life Ins. Co.*, 54 R. I. 261, and *Conlon* v. *John Hancock Mutual Life Ins. Co.*, 56 R. I. 88. Those cases are not factually similar to the case at bar and consequently are not in point. The *Chorney*

and *Conlon* cases dealt with industrial policies. The language of the condition in the *Mohr* case was materially different from that in the instant case and the facts therein did not raise the same issue as here.

An examination of the authorities reveals a wide divergence of opinion in construing similar language. Anno., 136 A.L.R. 1516. Some courts interpret such language to mean actual good health at the time of delivery of the policy. Other courts hold that in cases where there has been a medical examination by the insurance company the language means that the insured must remain in the same general state of health in the interim between the application, the medical examination and the delivery of the policy. These cases hold that, in the absence of fraud, if the insured in fact was not in good health at the time of the application and medical examination, and if he was unaware of his ailment and it was not discovered by the company doctor's examination, then the policy becomes effective so long as his condition remains the same up to the date of the delivery of the policy, unless in the interim there is a material change for the worse of which the insured has knowledge. After careful consideration we have concluded that the latter is the sounder construction. This is especially so in view of the fact that the application and policy in question were drawn by defendant. In such circumstances the language must be construed most strongly against it and in favor of the plaintiff.

In view of such construction and upon consideration of all the evidence most favorable to plaintiff, it is our opinion that it would support findings or reasonable inferences that the insured had no knowledge of his heart ailment in the period between the application and the delivery of the policy and that to his knowledge the condition of his health had not deteriorated during such interim. In other words there is evidence to support reasonable inferences or find-

ings that the policy was delivered during the continued insurability of the insured.

We shall next consider defendant's contention that the rule of continuing representations adopted by this court in *Columbian National Life Ins. Co.* v. *Industrial Trust Co.*, 53 R. I. 334, bars plaintiff from recovery. The instant policy provides that all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties. General laws 1956, §27-4-10, provides: "No misstatement made in procuring a policy of life insurance shall be deemed material or render the policy void unless the matter thus represented shall have actually contributed to the contingency or event on which the policy is to become due and payable; and whether the matter so represented contributed to said contingency or event, in any case, shall be a question for the jury."

The language of §27-4-10 is clear. Under its mandate it was the duty of the jury to determine whether the continuing representations of the insured, that he had not visited doctors or hospitals nor had an electrocardiogram taken, contributed to the contingency or event upon which the policy became due and payable. In other words the materiality of the continuing representations was for the jury to decide. In such circumstances the direction of a verdict would be an invasion by the trial justice of the province of the jury. We are therefore of the opinion that he did not err in denying defendant's motion for a directed verdict. This exception is overruled.

We will now consider defendant's exception to the denial of its motion for a new trial. This exception is based on the usual grounds that the verdict is against the law, the evidence and the weight thereof, and that it fails to do justice between the parties. The defendant did not except to any portion of the charge to the jury and it therefore became the law of the case. *Mingo* v. *Rhode Island Co.*, 42 R. I. 543. It was the jury's duty to determine the facts

in accordance with such charge. In the absence of proof to the contrary, it is presumed that they performed their duty in this regard.

The trial justice charged in substance that the fact that the insured had a heart condition at the time of the application would not in and of itself void the policy unless he knew of such ailment; that if during the interim between the application and the delivery of the policy there was a change in his health which he did not know about he would still be insurable; and if during that period there was a change for the worse, which he knew about and failed to report to defendant, the policy could be voided.

A careful examination of the transcript discloses that there is evidence from which the jury could reasonably infer that the insured had no knowledge of a heart ailment until after the delivery of the policy; that there was no change for the worse in his condition in the interim between the application and the delivery; and that if there were such a change, he had no knowledge thereof. In our opinion the trial justice was justified in concluding that the jury had determined the factual issues in accordance with his charge. The defendant's contention that the verdict is against the law is therefore without merit.

But defendant also argues that the verdict was against the evidence and the weight thereof; that the trial justice misconceived certain medical testimony; that he did not pass his independent judgment on the credibility of the witnesses and the weight of the evidence; and that the verdict does not do justice between the parties. After carefully examining the transcript we find nothing to indicate that the trial justice failed to do his duty in passing on the motion for a new trial. In such circumstances his decision carries great weight and will not be disturbed by us unless it is clearly wrong or he has overlooked or misconceived material evidence.

We find nothing in the record showing that he misconceived or overlooked any such evidence. The evidence is conflicting on several material points. The trial justice and the jury had the benefit of seeing and hearing the witnesses testify. That advantage is of great value in a case such as this where the credibility of the witnesses and the weight which should be given to their testimony play such an important part. After consideration of all the evidence we cannot say that the trial justice was clearly wrong in denying the defendant's motion for a new trial.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the verdict.

*Crowe, Hetherington & Chester, Benjamin C. Chester,* for plaintiff.

*Morrissey & Conley, Joseph L. Breen,* for defendant.