TRI-MOTORS SALES, INC., Appellant, v. TRAVELERS INDEMNITY COMPANY, Respondent. *

*January 10—February 5, 1963.*

* Motion for rehearing denied, with $25 costs, on April 2, 1963.

100

The page content is almost entirely redacted (blacked out), with only the page number "101" visible in the upper right corner.

For the appellant there was a brief by *Kenney, Korf & Pfeil* of East Troy, and oral argument by *Francis J. Korf*.

For the respondent there was a brief by *Godfrey, Godfrey & Neshek* of Elkhorn, and oral argument by *Thomas G. Godfrey*.

CURRIE, J. This appeal presents these issues:

(1) Were the inventory computations offered by plaintiff to establish the amount of its loss excludable (a) because of an exclusion clause in defendant's insurance policy, or (b) because they constituted an accountant's compilation made from books of account which were inadmissible under either sec. 327.24, or sec. 327.25, Stats?

(2) Even if such inventory computations were admissible, were they insufficient evidence upon which a reasonable jury could find proof of loss in excess of the amount awarded plaintiff by the court as a matter of law?

Plaintiff's method of keeping its books and records involved use of a general ledger and various journals as prescribed by General Motors Corporation (hereinafter "G. M."). The account of parts and accessories was kept on the basis of dollar value based upon cost because it was impractical to maintain a perpetual physical inventory. As plaintiff purchased parts and accessories this account was debited with the cost shown on the purchase invoices. When any parts or accessories were sold this account was credited with the cost price of same shown in the current G. M. price list. This accounting procedure was followed whether the parts or accessories (1) were used to repair customers' vehicles or used cars owned by plaintiff, or (2) were sold either at list price or at various discounted prices to customers or auto-repair shops. All sales slips were in triplicate and the posting into the journals was made from the original or "hard" copies. Any excess of sales price above cost price was credited to accounts other than the parts-and-accessories account.

Diegnan, the certified public accountant, who testified in behalf of plaintiff, had wide experience with auto dealers' methods of accounting gained from auditing the books of numerous garages. He testified that the book value of parts and accessories shown in the parts-and-accessories account was checked against an inventory taken by counting the vari-

ous parts and accessories and pricing them at current cost prices. When so checked, Diegnan testified that the book value of the parts-and-accessories account would show a normal percentage of variance between one and three percent in relation to total sales. Diegnan testified to the following variances between book value and value established by taking such an inventory in plaintiff's parts-and-accessories department at various account times between October 19, 1954, to December 31, 1960:

| | | Variation |
|---|---|---|
| Oct. 19, 1954 | Jan. 30, 1955 | 1.06% |
| Jan. 30, 1955 | Nov. 30, 1956 | 2.43% |
| Nov. 30, 1956 | Sept. 30, 1957 | 13.28% |
| Sept. 30, 1957 | Oct. 11, 1958 | Insignificant |
| Oct. 11, 1958 | Dec. 31, 1959 | 9.82% |
| Dec. 31, 1959 | Dec. 31, 1960 | 3.06% |

Diegnan further testified that the actual value of plaintiff's inventory of parts and accessories as of December 31, 1959, was $14,006.31 less than the value shown on plaintiff's books.

Plaintiff's brief states, "Obviously, there was thievery in the period from November, 1956, to September, 1957, . . ." but notes that no one was apprehended as a thief. The basis for this assertion is the large variation amounting to 13.28 percent of total sales between the actual inventory of parts and accessories on hand September 30, 1957, and the appreciably higher value of such inventory as reflected in plaintiff's books of account. Plaintiff contends, however, that inventory computations are admissible to prove the amount of loss where the fact of loss is established by the admissions of an employee such as Woodward. Nevertheless, the trial court disagreed and ruled inadmissible the exhibits consisting of inventory computations prepared by Diegnan from plaintiff's books of account, which plaintiff offered to prove the amount of its loss as a result of Woodward's thefts while an employee,

on the ground that such computations were excluded from consideration by sec. 2 (b) of the paragraph captioned "Exclusions" under "General Agreements" of the insurance policy issued by defendant to plaintiff.

*Interpretation of Exclusion Clause of Policy.*

Sec. 2 (b) of the policy provides:

"This policy does not apply: (b) to loss, or to that part of any loss, as the case may be, the proof of which, either as to its factual existence or as to its amount, is dependent upon an inventory computation or a profit-and-loss computation; provided, however, that this paragraph shall not apply to loss of money, securities, or other property which the insured can prove, through evidence wholly apart from such computations, is sustained by the insured through any fraudulent or dishonest act or acts committed by any one or more of the employees; . . ."

In interpreting this clause we consider that sec. 6 of "General Agreements" of the policy is relevant. This section provides:

"The insured shall keep records of all the insured property in such manner that the [Travelers Indemnity] company can accurately determine therefrom the amount of loss."

The portion of sec. 2 (b) which poses the problem of interpretation is the proviso which follows the semicolon and limits the operation of the absolute prohibition against use of inventory computations preceding the semicolon. This proviso may be interpreted two ways as applied to the facts of the instant case: (1) The words "as to its amount" appearing in the absolute prohibition preceding the semicolon carry over into the proviso and prohibit use of inventory computations to prove the amount of plaintiff's loss even though plaintiff has established by independent evidence that Woodward did steal plaintiff's parts and accessories during

the period of his employment; or (2) once plaintiff has proved by independent evidence that Woodward did steal parts and accessories during the period of his employment, the prohibition against use of inventory computations in that portion of the paragraph preceding the semicolon is rendered inoperative.

If the first interpretation were to be adopted, the proviso after the semicolon would serve no useful purpose because if the insured was able to prove its loss by evidence wholly apart from computations made from its inventory records, then such computations would be merely cumulative evidence of the loss. This would appear to be an absurd result especially in view of sec. 6 which requires insured to keep accurate records. We deem the wording of the proviso sufficiently ambiguous to render applicable the rule that in case of ambiguity or reasonable doubt as to the meaning of exclusion clauses in a policy, drafted by an insurance company, the ambiguity is to be resolved against the insurer. *Meiser v. Aetna Casualty & Surety Co.* (1959), 8 Wis. (2d) 233, 238, 98 N. W. (2d) 919, and *Northland Bottling Co. v. Farmers Mut. Automobile Ins. Co.* (1958), 3 Wis. (2d) 326, 329, 88 N. W. (2d) 363. Therefore, we adopt the second interpretation and hold that inventory computations, which would tend to prove the amount of plaintiff's loss, would not be excludable under the terms of the policy where independent evidence first showed that Woodward had stolen items of plaintiff's parts and accessories during the period of his employment.

*Admissibility of Books and Records upon Which Offered Inventory Computations Were Made.*

Defendant contends that even if plaintiff's inventory computations were not excludable under sec. 2 (b) of the policy quoted above, they would be excludable on the ground that such computations were based upon books and records which were themselves inadmissible.

Tabulations or summarized statements made by a competent person, and identified by his testimony, are admissible in evidence. The reason in such a situation for permitting use of a tabulation or summarized statement is to avoid the inconvenience of introducing an entire mass of records which would have to be read to, or inspected by, a jury. Nevertheless, before such tabulations or summarized statements are admitted, the books and records upon which they are based must be in evidence, or in court, or available to the opposite party. *Gregg v. Middle States Co.* (1940), 228 Iowa 933, 944, 945, 293 N. W. 66, 132 A. L. R. 415; 4 Wigmore, Evidence (3d ed.), p. 434, sec. 1230; and 20 Am. Jur., Evidence, p. 400, sec. 449. Among the Wisconsin cases in which the admission of such tabulations or summarized statements has been upheld are *Graton & Knight Co. v. Mayville Shoe Corp.* (1945), 247 Wis. 11, 18 N. W. (2d) 359, *Ruth v. State* (1909), 140 Wis. 373, 122 N. W. 733, and *Jordan v. Estate of Warner* (1900), 107 Wis. 539, 83 N. W. 946.

The question arises as to whether the books and records, which must be produced or made available to the opposite party, must themselves be admissible in evidence before tabulations or summarized statements based thereon are admissible. In the *Graton & Knight Co. Case* this court held that such books and records did not have to be admissible into evidence. Nevertheless, we deem that holding applicable to a situation, as in that case, where the person who prepares the tabulation or summarized statement has personal knowledge of the facts recorded in the books and records from which the tabulation or summarized statement is prepared. Thus such books and records merely serve to refresh the recollection of the witness. Cf. Anno. Refreshment of recollection by use of memoranda or other writings, 82 A. L. R. (2d) 473, and the reference to the *Graton & Knight Co. Case,* at page 538. See also *Dahl v. H. C. Crook Realty Co.* (1932), 208 Wis. 506, 511, 243 N. W. 426.

In the situation presented in the instant case, where the tabulation or summarized statement of the books and records has been prepared by one who has no personal knowledge of the facts recorded in such books and records, the competency of the tabulation or summarized statement must derive from the books and records on which it is based; thus such books and records must themselves be admissible into evidence. Therefore, we hold that where the tabulation or summarized statement is prepared by one whose memory as to the actual recorded facts would not be refreshed by referring to the books and records upon which the tabulation or summarized statement is based, such books and records must themselves be admissible in evidence.

In the instant case the permanent records of plaintiff, consisting of its original journals and general ledger, were offered in evidence and received as Exhibit 4. Nevertheless, defendant contends that these books and records were not admissible under either secs. 327.24 or 327.25, Stats. As originally enacted sec. 327.24 pertained to the books and records of a party and sec. 327.25 related to those of a third person not a party to the action. Skogstad and Koppa, Admissibility of Business Entries, 1958 Wisconsin Law Review, 245, 247. In 1939, sec. 327.25 was broadened by an amendment to include business entries of a party as well as those of some third person. Ibid. Nevertheless, since we are satisfied the books and records constituting Exhibit 4 were admissible under sec. 327.24,[1] we find it unnecessary to consider their admissibility under sec. 327.25.

[1] Sec. 327.24, Stats., in part provides:

"Whenever a party in any action or proceeding shall produce at the trial his account books, and prove that the same are his account books kept in due course of his business, that they contain the original entries for moneys, paid or received, property delivered or furnished or services performed; that such entries were made contemporaneously with the transactions therein entered; that they are in his handwriting or that of a person or persons authorized to

These books and records were identified by the testimony of Salen, plaintiff's president and treasurer, as follows: They were plaintiff's account books kept in the usual course of business under Salen's supervision and direction. The entries therein were made contemporaneously with the transactions to which they related and were in the handwriting of persons authorized to make them. These books of account were true and correct to his knowledge. One of the accounts kept in these books was an account of parts and accessories. The posting into the account was made from the invoices of parts and accessories purchased, and from the hard copies of the sales slips covering sale of parts and accessories, including those used in filling repair orders. All purchases and sales of parts and accessories for the period from August, 1954, through December, 1960, are reflected in these books.

Defendant contends that the purchase invoices and hard copies of the sales slips are the "original entries" for purchases and sales of parts and accessories within the meaning of sec. 327.24, Stats. Therefore, defendant argues, the trial court erred in admitting plaintiff's books of account without requiring the production of all purchase invoices and sales slips from which postings were made into such books of account. We deem defendant's contention erroneous in view of our conclusion that the journal entries made from such purchase invoices and sales slips are the "original entries" within the meaning of sec. 327.24. McCormick, Evidence (hornbook series), p. 600, sec. 284, states:

"The entries to be admissible must be 'original' entries, and not mere transcribed records or copies. This restriction

make charges or give credits in said books, and are just and true to the best knowledge and belief of the person making the proof, such books shall be received as *prima facie* evidence of the entries contained therein. If any book has marks which show that the entries have been transferred to a ledger, the entries shall not be received unless the ledger is produced, or its nonproduction is excused by the court."

is based upon the assumption that the original entries are likely to be more accurate than subsequent copies or transcriptions. In many businesses, however, it is customary for the daily transactions such as sales, or services, to be noted upon slips, memorandum books, or the like, by the employee concerned, such as a salesman, clerk, foreman, weigher, or workman, and thereafter these slips or memoranda are regularly and promptly collected and entries made therefrom in a permanent book such as a journal or ledger. In such event, the entries in the permanent book sufficiently comply with the requirement that the entries be 'original,' and would certainly be admissible if the slips or memoranda have disappeared, and would seem, since they are held to be original entries, to be independently admissible without any proof as to the unavailability of the first tentative memoranda."

See also Anno. What constitutes books of original entry within rule as to admissibility of books of account, 17 A. L. R. (2d) 235, 246. In *Taylor v. Davis* (1892), 82 Wis. 455, 52 N. W. 756, an agent for plaintiff noted daily on a piece of paper the amount of logs that were scaled. The agent turned these pieces of paper over to plaintiff's bookkeeper who posted into a shipping book the amount of logs scaled as shown on such pieces of paper. The pieces of paper were then destroyed. The court held that the shipping book was a book of original entry which was properly admitted into evidence after the necessary foundation had been laid by testimony of plaintiff's bookkeeper.

Therefore, the journals and general ledger constituting Exhibit 4 were properly ruled admissible by the trial court under sec. 327.24, Stats.

*Sufficiency of Inventory Computations in Point of Time.*

The inventory computations prepared by Diegnan disclosed that the value of plaintiff's parts and accessories as of December 31, 1959, based on a physical count was $14,006.31 less than the book value thereof disclosed by the parts and

accessories account. These computations further showed that prior to December 31, 1959, a physical inventory had not been taken since October 11, 1958. Thus this discrepancy of $14,006.31 occurred over a period of fourteen and two-thirds months. Nevertheless, Woodward's employment by plaintiff only extended from May 29, 1959, to November 25, 1959, or approximately six months within this period of fourteen and two-thirds months. The record is completely barren of proof that any of plaintiff's employees other than Woodward misappropriated any parts and accessories. This $14,006.31 discrepancy was 9.82 percent of total sales for this fourteen and two-thirds months' period. Nevertheless, during the ten-month period from November 30, 1956, to September 30, 1957, there had been a variance of $12,411.31 between the value revealed by a physical inventory and the book value of plaintiff's parts-and-accessories account. This variance was 13.28 percent of total sales.

In the course of his testimony, Diegnan stated that plaintiff's purchases of parts and accessories exceeded its sales thereof by $13,982.59 during the period of May 31, 1959, to November 30, 1959, roughly the period of Woodward's employment. Nevertheless, Diegnan did not testify with respect to any variance between purchases and sales during the remainder of the period from October 11, 1958, to December 31, 1959, nor did he point out any particular significance of this $13,982.59 figure. Furthermore, the record does not disclose whether Woodward had exclusive control over the amount of parts and accessories that plaintiff purchased during the period of his employment as manager of plaintiff's parts-and-accessories department.

Except for the thefts admitted by Woodward during the six months of his employment, plaintiff has not proved "wholly apart from such [inventory] computations" the fact of any loss of property "through any fraudulent or dishonest

act or acts committed by any one or more of the employees" as it is required to do under sec. 2 (b) of the exclusions of the policy. Neither Woodward's admitted thefts nor proof comprised of inventory computations is sufficient basis for establishing the fact of further recoverable losses on the policy due to acts of other employees.

We conclude on the record before us that even if the excluded inventory computations were to be admitted into evidence, a jury could only speculate in arriving at a verdict because it would have to determine what part of the $14,006.31 discrepancy for the period of fourteen and two-thirds months occurred during Woodward's six-month period of employment. It is elementary that verdicts cannot be based upon conjecture or speculation. *Frenzel v. First National Ins. Co.* (1954), 267 Wis. 642, 646, 647, 66 N. W. (2d) 679.

We therefore conclude that even though the offered inventory computations were admissible despite the provisions of sec. 2 (b) of the exclusions of the policy, the trial court properly took the case from the jury.

*By the Court.*—Judgment affirmed.