KENTUCKIANA SALES, INC., Appellant,

v.

SECURITY INSURANCE COMPANY OF NEW HAVEN, Appellee.

Court of Appeals of Kentucky.

Oct. 8, 1965.

Wm. A. Miller, Joseph R. Rubin, Louisville, for appellant.

Raymond O. Harmon, Boehl, Stopher, Graves & Deindoerfer, Louisville, for appellee.

DAVIS, Commissioner.

Kentuckiana Sales, Inc., (hereinafter Kentuckiana, appellant) sought recovery of the appellee insurance company on a blanket position bond insuring Kentuckiana against the dishonest acts of its employees. At the conclusion of all the evidence the trial court directed a verdict denying recovery; from the judgment on the directed verdict Kentuckiana appeals.

The basic question for decision is the proper interpretation of Exclusion, § 2 of the policy of indemnity, which is thus worded:

> "Exclusion, Section 2. This bond does not apply to loss, or to that part of any loss, as the case may be, the proof of which, either as to its factual existence or as to its amount, is dependent upon an inventory computation or a profit and loss computation; provided, however, that this paragraph shall not apply to loss of money or other property which the insured can prove, through evidence wholly apart from such computations, is sustained by the insured through any fraudulent or dishonest act or acts committed by any one or more of the Employees."

Kentuckiana contends that during the period of July 30, 1961 to September 9, 1961, while the policy was in force, it suffered loss of merchandise valued at $9,896.27 and loss of trading stamp books valued at $2,493.00, due to the thefts of Robert J. Jones, an employee of Kentuckiana.

The trial court was of the view that the Exclusion, § 2, just quoted, foreclosed the right of recovery by Kentuckiana in light of the nature of the evidence. Review of that decision requires statement of the facts as developed in the trial.

Kentuckiana operates a redemption center for trading stamp books. The stamps were sold by Kentuckiana to retail merchants who gave them to patrons with purchases of merchandise. Kentuckiana maintained the redemption center at which various articles of merchandise were exchanged to persons presenting books of stamps.

In the routine method of operation of the redemption center the clerks would record daily the items of merchandise delivered to patrons presenting the stamps, along with the number of books of stamps received in exchange for merchandise. At the close of each day's business the manager made a physical count of the stamp books in order to reconcile the actual books with the number shown to have been received that day. The books then were processed through a canceling machine wherein holes were punched through each stamp, thus effectively destroying any further usage of them. The canceled books were packed in boxes and taken to be burned in an incinerator about once each week.

It was the usual practice for the merchandise to be delivered to patrons directly from the stock room at the redemption center. The supply of merchandise in this stock room was replenished as needed, by requisition of merchandise from a warehouse. Jones, the allegedly dishonest employee, was a helper in the stock room at the redemption center. His duties included the carrying of merchandise from the stock room to the patrons, receiving additional merchandise into the stock room, and canceling the stamp books redeemed during each day.

In late August, 1961, Kentuckiana's manager was alerted to the possibility that trading stamp books were being stolen from the redemption center. The manager reported this information to an agent of the appellee insurance company; the latter suggested that a check be made in an effort to learn what was happening. The manager counted the canceled books on hand awaiting burning, and compared them with the number of books recorded as redeemed, and for the period beginning August 21, 1961, through September 8, 1961, learned that 1,607 fewer books than had been redeemed were canceled. However, 201 of these books were recovered from the boiler in the building on September 8, 1961, and 21 books were recovered when a person presenting them fled the scene upon being questioned about them. Hence, the claim made by Kentuckiana with respect to the books is for 1,385 books. It was shown that these books have an average cost value to Kentuckiana of $1.80 each, thus, the claim of $2,493.00 on this account.

In addition to the daily counting of the redeemed books and the physical comparison of those tallies with the number of books being canceled, the manager employed the technique of placing secret markings on the redeemed books in order to determine whether these very books were, in fact, being redeemed a second time. By this process it was definitely learned that some books which had been redeemed and placed in line for cancelation were not being canceled, but were being presented anew.

On September 8, 1961, the manager had arranged that Jones should be the only stock clerk in the store during the entire day; when Jones left for the day the man-

ager observed that it was physically impossible for Jones to have concealed about his person any merchandise or substantial number of stamp books. Thereupon the manager, with the president and sole owner of Kentuckiana, conducted a search of the store premises which led to their discovery of 201 uncanceled stamp books in an unused boiler. These 201 books bore an identifying mark showing they had been redeemed. Also in the old boiler were a blanket and coffee maker from the stock of merchandise.

Jones was arrested on the next morning when he reported for work. Criminal prosecution was had in the Jefferson Circuit Court in which Jones was charged with conversion of a coffee maker and trading stamps from Kentuckiana. Jones entered a plea of guilty to the charge and was sentenced to imprisonment for one year. Kentuckiana filed a civil action against Jones in the Jefferson Circuit Court in which it alleged that Jones had misappropriated trading stamps valued at $2,493.00 and merchandise valued at $9,896.27, property of Kentuckiana, and sought judgment against Jones in the sums stated. Jones made no defense to the civil action, and default judgment was taken against him. Jones signed a statement, at the request of Kentuckiana's attorney, in which Jones substantially confessed to his guilt of misappropriation of the stamp books and the merchandise. At the trial of this action, however, Jones repudiated the statement.

Kentuckiana sought to introduce in evidence the proceedings in the civil action, but the trial court refused to receive this evidence. Likewise, the trial court rejected evidence obtained by way of Requests for Admission reflecting Jones's plea of guilty in the criminal action.

It should be noted that Kentuckiana's offer of proof as to the value of merchandise lost was rejected by the trial court as incompetent. Kentuckiana sought to prove the monetary value of allegedly stolen merchandise by showing the amount of an inventory made June 30, 1961, plus the value of merchandise brought in by Kentuckiana between June 30 and September 9, 1961, less the value of stamp books redeemed in that same period, less the physical inventory on hand September 30, 1961. Under this computation, the value of lost merchandise is reflected as $9,896.27. There was no showing of loss as to any particular commodity, but there was an imbalance between the opening and closing inventories, taking into account the merchandise acquired and disposed of during the inventory period.

The trial court reasoned that Exclusion, § 2, served to make incompetent the evidence in the civil proceedings and the inventory computations and statements. Appellant vigorously contends that the trial court committed reversible error in so ruling.

Appellant first asserts that the exclusion does not purport to be a rule of evidence at all, so that the tendered testimony should have been received, subject to whether it sufficiently proved the loss under the policy. We do not deem it necessary to resolve this point, in view of our conclusions hereinafter expressed.

Next, says appellant, the first portion of the exclusion (the first portion is that part of the exclusion from its beginning to the semi-colon after the word "computation") causes the exclusion to be operative only if the proof of loss is "dependent" upon inventory or profit and loss computation, in whole or part. Appellant reasons that the word "dependent" means "without other evidence," and is meant merely to preclude recovery on such proof as was condemned in Home Owned Stores, Inc. v. Standard Accident Insurance Co., 256 Ky. 482, 76 S.W.2d 273. In the cited case this court held that plaintiff had failed to prove a claim against the insurance company on a

fidelity bond because plaintiff merely showed a "shortage"—and completely failed to show any act of the bonded employee amounting to fraud or dishonesty. To focus upon appellant's argument on this score, we quote from his brief:

"It certainly does not prohibit the insured from supplementing the proof and corroborating it by the use of such inventory computations or profit and loss computations. On the other hand, if such computations are the only proof and without such proof there is no evidence of either the existence of a loss or its amount, then the clause is effective."

We agree with appellant as to the quoted statement. The difficulty here is whether there is any proof other than the inventory or profit and loss computations.

The third point advanced by appellant as to the Exclusion, § 2, is that the first clause of it (language before the semicolon) deals with the factual existence *and* the amount of loss, whereas the latter portion of the same exclusion requires only proof of the "factual existence" of loss by other proof that inventory or profit and loss computations. This view is followed in Tri-Motors Sales, Inc. v. Travelers Indemnity Co., 19 Wis.2d 99, 119 N.W.2d 327. To the contrary is Mid-Continent Stores, Inc. v. Central Surety and Insurance Corp., Mo.App., 377 S.W.2d 567.

We turn to a consideration of the evidence adduced by Kentuckiana, first, as to the merchandise claim of $9,896.27, then as to the claim of $2,493.00 for the stamp books.

■ It is our view that there was not sufficient evidence to support a verdict for Kentuckiana as to the merchandise claim, in face of the quoted exclusion. The only showing as to the amount of any "loss" of merchandise is predicated upon the inventory shortage. Jones specifically refut-ed his previously given statement, and positively testified that such merchandise as he had stolen from Kentuckiana had been recovered by the police. Neither do we consider that Jones's conviction, upon his guilty plea, of conversion of the coffee maker and blanket, amounts to "other evidence." In the first place, these articles were not "lost," because they were recovered by Kentuckiana. Secondly, we adhere to the view that the guilty plea of Jones in the criminal prosecution may not be received as substantive evidence against the appellee company, since the latter was not a party to that litigation. Jones was a "turncoat" witness. This court has consistently held that out-of-court prior statements of a witness may not be used as substantive evidence, no matter whether such statements confirm or refute the in-court testimony of the witness. Under some circumstances the prior statements may be used to impeach a witness, but not as substantive evidence. See Webb v. Commonwealth, Ky., 314 S.W.2d 543, and cases therein cited; 20 Am.Jur., Evidence, § 458. It is plain, therefore, that the prior written statement of Jones, as well as his guilty plea, amounted to mere hearsay so far as appellee is concerned. Neither was substantive evidence against appellee, as to the factual existence of a loss or the amount of it.

■ Appellant contends, however, that in any event the proceedings in the civil action amount to substantive evidence—or at least *prima facie* evidence of substance. Reliance is had upon Commonwealth v. Bracken, 17 Ky.Law Rep. 785, 32 S.W. 609, and numerous decisions from other jurisdictions which support the view that a judgment against the principal in a bond is admissible in an action against the surety, even though the surety was not a party to the first action. See 50 Am.Jur., Suretyship, § 200, p. 1036. It suffices to say that in none of the authorities relied on was there present a clause of exclusion similar to the one before us now. It is

also significant to observe that Restatement of Law, Security, § 139(3), in recognizing the general rule of *prima facie* admissibility, points out that in case of *default* judgment against the principal there is not even a *prima facie* case made against the surety. For these reasons, we agree that the trial court properly excluded the evidence as to the criminal conviction, the civil proceedings, and the prior out-of-court statement. It follows that the directed verdict was correct as it related to the claim for loss of merchandise.

■■ But we think there was sufficient evidence, without reference to the matters of evidence excluded, to warrant submission of the case to the jury as to the loss of the stamp books. It appears that the trial court was of that view, but declined to submit the issue as to the stamp books on the theory that there was no showing of "loss" as to these books, absent a showing that the books had been presented for redemption a second time. In our judgment there was competent evidence tending to show that the 1,385 books were misappropriated by Jones; this evidence was unrelated to inventory computation or profit and loss computation. Moreover, we consider that the loss of these books was a real loss to Kentuckiana—not *damnum absque injuria*. We accept as sound the proposition that these books have a definite negotiable characteristic which makes them tantamount to "bearer" paper. Kentuckiana must redeem books presented, unless it is in position to demonstrate that the holder has no title. As a practical matter, we think it would be unduly harsh and unrealistic to require Kentuckiana to show affirmatively each twice-redeemed book; the proof of their loss is sufficient.

The judgment is affirmed insofar as it relates to the claim of appellant of $9,896.27 for merchandise, and the judgment is reversed with respect to appellant's claim of $2,493.00 for stamp books, with directions to grant a new trial as to the latter claim.