264 A.2d 320.

DANAL JEWELRY COMPANY *vs.* FIREMAN'S FUND
INSURANCE COMPANY.

APRIL 22, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J. This is a civil action to recover damages for an alleged loss of certain metal under the "Employee Dishonesty Coverage" of a "Comprehensive Dishonesty, Disappearance and Destruction Policy" issued on November 26, 1965, by the defendant to the plaintiff. The case was heard without a jury by a justice of the Superior Court who dismissed the complaint and entered judgment for the defendant on November 27, 1968. On December 3, 1968, the plaintiff filed a motion for a new trial.[1] The trial justice denied the motion, and the plaintiff appealed to this court from the denial thereof and judgment entered subsequent thereto.

---

[1] On the view we take of this case, plaintiff cannot recover, and, therefore, it is unnecessary for us to decide whether a motion for a new trial lies under Rule 59 (a) Super. R. Civ. P. in an action tried without a jury. On this question we express no opinion.

The plaintiff, a manufacturer of high fashion jewelry and hair goods, purchased white metal alloy in the form of six-pound bars, melted and cast it into various jewelry forms. In its plant on the second floor of a three-story building located in Providence, plaintiff employed approximately 80 persons, among whom there was a relatively constant turnover. Other tenants occupied the floors below and above the plaintiff, two common stairways providing access to the second and third floors. The bars of alloy came packed in boxes and were stored out in the open on the floor, to which a number of plaintiff's employees had access. It appears from the evidence that the officers of plaintiff company, the foreman, and the plant superintendent all had access to its premises during non-business hours.

In late February 1966 officers of plaintiff company became concerned with the large amount of white metal being constantly ordered by it and shipped to its premises in comparison with the amount of that metal going into manufactured goods. Their first suspicion was that someone was making his way into the premises during the night and carting the metal bars away. As a result, on February 28, 1966, they placed small invisible threads across the doorway to the premises at night. On the following morning, March 1, 1966, the threads were found intact and no shortage was observed. However, later that morning a shortage was discovered, and thus attention was directed toward the possible theft by employees. Vincent Passaretti, who had been an employee of plaintiff since September 15, 1965, was caught with some 30 odd bars of white metal in his car. He was arrested and pleaded guilty to a charge of stealing the bars. Those bars were returned to the plaintiff. Passaretti was called as a witness in the case at bar. He admitted stealing the bars by putting them under his shirt and taking them out to his car in

the parking lot, but he denied that he had ever taken any more than those recovered from his car.

The plaintiff then proceeded to compute what it claims was its total loss throughout the period of Passaretti's employment. As will appear later in this opinion plaintiff based its computation on the total purchase of white metal less the total sales in the form of processed jewelry. The plaintiff claims that the difference, after adjusting for an estimated inventory on hand at the beginning and a fixed inventory at the end of the period, represents the amount stolen by its employee. Accordingly, plaintiff made demand for recovery under the "Employee Dishonesty Coverage" of its policy with defendant, whereby the latter in clause I of the "Insuring Agreements" promises to pay the insured for any

> "Loss of Money, Securities and other property which the Insured shall sustain through any fraudulent or dishonest act or acts committed by any of the Employees, acting alone or in collusion with others * * * ."

The defendant refused to make payment and based its denial of liability on the ground that plaintiff's claim of loss was excluded by the terms of the policy because its proof, both as to its factual existence and as to its amount, was dependent upon an inventory computation. The defendant relied on an exclusion clause in the policy which reads as follows:

> "Section 2. This Policy does not apply:
> "(a) * * *
> "(b) under Insuring Agreement I, to loss, or to that part of any loss, as the case may be, the proof of which, either as to its factual existence or as to its amount, is dependent upon an inventory computation or a profit and loss computation; provided, however, that this paragraph shall not apply to loss of Money, Securities or other property which the Insured can prove, through evidence wholly apart from such com-

putations, is sustained by the Insured through any fraudulent or dishonest act or acts committed by any one or more of the Employees * * *."

The plaintiff's proof of loss was based on a computation of alleged losses during the period of Passaretti's employment from September 15, 1965, to March 1, 1966. Since plaintiff never kept any inventory record of its supply of white metal, it explained the alleged loss at the trial through an exhibit prepared by its accountant. It estimated the probable amount of metal on hand on September 15, 1965, and then added to it all of its purchases of white metal up to March 1, 1966, using the invoices of its supplier to ascertain the total poundage purchased. It then subtracted the amount of metal which it calculated was used in filling the various orders sold by it during the period in question. It also subtracted the amount which it estimated was on hand at the end of the period on March 1, 1966. The difference, it concluded, represented the amount of white metal which Passaretti must have stolen.

The plaintiff introduced in evidence invoices for all of its purchases of the metal between September 15, 1965, and March 1, 1966, and records of all jewelry sold within that period. In determining how much metal went into the various items which it manufactured and sold, plaintiff's officers testified as to the weight of metal that went into the items sold and resorted to its so-called costing records, that is, the computation it had used in establishing its price for each order. The plaintiff's vice-president testified that the costing record contained a cost factor for material, along with labor and other expenses and that from the cost of material used he could deduce the amount of material used in manufacturing the particular item. On the basis of its computation plaintiff concluded that it had sustained a loss of 4,819.80 pounds or a money loss of $7,542.98 figured at a valuation of $1.565 per pound.

During the proceedings in the Superior Court it was

discovered that the policy did not go into effect until November 26, 1965, and that therefore no loss could be claimed for the period before that date. The trial justice granted plaintiff's request for leave to submit a revised computation of loss commencing November 26, 1965. The plaintiff's accountant, on the basis of records of purchases and sales already in evidence, made a computation which showed a loss of 6,080.37 pounds or a money loss of $9,-485.37 at a valuation of $1.56 per pound, a greater loss for a shorter period of time.

The plaintiff argued in the Superior Court, as he does here, that his computation was not an inventory computation, but rather a books and records computation, and therefore his claim was not excluded by the above-mentioned exclusionary clause. The plaintiff also argues that the exclusionary clause is sufficiently ambiguous to render applicable the rule that in case of ambiguity or reasonable doubt as to the meaning of exclusionary clauses in a policy, drafted by an insurance company, the ambiguity is to be resolved against the insurer. It cited *Knowles* v. *Lumbermens Mutual Casualty Co.*, 69 R. I. 309, 33 A.2d 185, and *Madsen* v. *Metropolitan Life Insurance Co.*, 90 R. I. 176, 156 A.2d 203, in support of the latter argument.

The trial justice rendered a carefully prepared and well-reasoned decision which contains a review of the pertinent evidence presented by plaintiff and also a discussion of and reference to several cases in other jurisdictions which have construed exclusionary clauses similar to the one in the case at bar. A conflict of opinion has developed in this area resulting in the existence of two lines of cases. One line of cases, and they appear to constitute the weight of authority on this issue, have found the clause free of ambiguity and applied it to exclude losses, "* * * the proof of which, either as to its factual existence or as to its amount, is dependent upon an inventory computation or

a profit and loss computation * * *." *Paramount Paper Products Co.* v. *Aetna Casualty & Surety Co.,* 182 Neb. 828, 157 N.W.2d 763; *Gillette Co.* v. *Travelers Indemnity Co.,* 365 F.2d 7 (7th Cir. 1966); *Gotcher Engineering & Manufacturing Co.* v. *United States Fidelity & Guaranty Co.,* Miss., 193 So.2d 115. See also Kurland, *Claims for Inventory Shortage Resulting from Employee Dishonesty Under Fidelity Insurance Bonds—A Present Appraisal,* 33 Ins. Counsel J. 397 (July 1966).

The trial justice rejected the plaintiff's contention that its proof of loss was by a books and records computation and not by an inventory or profit and loss computation. He held that, without the inventory assumed at the beginning and that taken at the end, it was completely impossible to determine the amount of that loss except through use of "inventory computation," that is, the difference between the inventory testified as probable at the beginning and the exact inventory present at the end of the period. He therefore concluded that if the majority view were adopted, the plaintiff could not prevail because its proof was dependent upon an inventory shortage.

The second line of cases which have construed the clause in question hold that the clause is ambiguous and that the portion relied upon to exclude the use of inventories both as to the existence and amount of loss is modified by the proviso that follows, thus making that first portion of the clause not literally operative. See *Tri-Motors Sales, Inc.* v. *Travelers Indemnity Co.,* 19 Wis.2d 99, 105-6, 119 N.W.2d 327, 330-331, which represents the view of the second line of cases and which appears to be the minority view. The trial justice held that, if the construction adopted by the minority view is accepted, the extent of the admissibility and acceptance of the inventory records is bound to depend upon the question of whether under all the circumstances, including an assessment of their

trustworthiness, the plaintiff had made out its case by a fair preponderance of the evidence.[2] He held that this involved the resolution of two questions, namely, whether plaintiff had presented sufficient evidence to prove that the shortage claimed was due to employee theft, and, if so, whether plaintiff had proven the amount of such theft.

He found that, while the apprehension of the employee stealing the metal would certainly support an inference that he had probably done so before, it fell short of proof that the entire loss was thus caused. The trial justice then held that, even if it were conceded that plaintiff had introduced sufficient proof to pin the losses on an employee, plaintiff still had the burden of proving the amount of those losses, and he found that plaintiff had failed to do this.

To summarize, the trial justice found that if the majority view were adopted in construing the policy exclusion, the plaintiff's claim, being based on an inventory computation, fell within the exclusion as a matter of law. He then assumed the minority view in construing the policy, which view would not exclude the claim as a matter of law, and decided that the plaintiff had failed to prove by a fair preponderance of the evidence (1) that the alleged shortage was due to employee dishonesty and (2) the amount of the alleged shortage.

The plaintiff contends that its proof of loss does not

---

[2]"Loss Caused by Unidentifiable Employees

"Section 4. If a loss is alleged to have been caused by the fraud or dishonesty of any one or more of the Employees and the Insured shall be unable to designate the specific Employee or Employees causing such loss, the Insured shall nevertheless have the benefit of Insuring Agreement I, subject to the provisions of Section 2 (b) of this Policy, provided that the evidence submitted reasonably proves that the loss was in fact due to the fraud or dishonesty of one or more of the said Employees, and provided, further, that the aggregate liability of the Company for any such loss shall not exceed the Limit of Liability applicable to Insuring Agreement I."

come within the policy exclusion, since it introduced independent evidence of the loss aside and apart from inventory and profit and loss computations; that the policy calls for reasonable proof of a theft loss, not convincing proof or proof beyond a reasonable doubt; and that the plaintiff has fulfilled this burden.

The defendant argues that plaintiff's claim is excluded by the terms of the policy exclusion, because plaintiff's proof of loss, both as to its factual existence and as to its amount, is dependent upon an inventory computation and, alternatively, even if plaintiff's claim is not so excluded, the trial justice was not clearly wrong in his conclusion that plaintiff had failed to prove by a fair preponderance of the evidence that it had lost $9,485 or even $7,500 worth of white metal through employee dishonesty.

The plaintiff, in challenging the correctness of the trial justice's decision, raises two main issues. One is whether its proof of loss comes within the exclusion of the policy. As we have previously stated, the defendant argues that plaintiff's claim of loss is excluded by the terms of the policy because its proof, both as to its factual existence and as to its amount, is dependent upon an inventory computation.

The other question raised by plaintiff's appeal is whether it has reasonably proven that the shortage claimed was due to employee theft, and, if so, the amount thereof. In other words, if plaintiff's claim is not excluded by the exclusionary clause in question, was the trial justice clearly wrong in finding that plaintiff had failed to prove by a preponderance of the evidence (1) that it had suffered a loss of metal through employee dishonesty and (2) the amount of such loss?

On the view we take, it is not necessary for this court to decide at this time whether to adopt the so-called majority view which holds that the exclusionary clause in

question is not ambiguous or the minority view which holds that it is. For the purpose of this case we shall assume, without deciding, that plaintiff's claim is not excluded by the language of the policy. We shall proceed to determine whether the evidence and the reasonable inferences to be drawn therefrom warrant the trial justice's findings that plaintiff failed to prove by a fair preponderance of the evidence (1) that its alleged loss was due to employee dishonesty and (2) the amount thereof.

The trial justice was not satisfied that the evidence presented by plaintiff, which we do not believe requires repetition here, was sufficient to prove that plaintiff's alleged loss was the result of employee dishonesty. We cannot fault him on this. The fact that Passaretti stole some 30 odd bars in February/March 1966 could create a suspicion — and indeed could reasonably support an inference — that he stole more than was found in his car; however it would be pure speculation to say that his admitted theft of the 30 odd bars could reasonably support an inference that he stole the amount which plaintiff claims was lost during the period of his employment. In any event we cannot say that the trial justice's inference to the contrary was unreasonable. Moreover, the evidence certainly does not rule out losses from theft by nonemployees. As the evidence shows, there were other occupants of the building, and others besides the plaintiff's officers had access to plaintiff's premises.

With regard to the trial justice's finding that plaintiff failed to prove the amount of its alleged loss, we are satisfied that his finding was correct. We have already discussed the evidence presented by plaintiff to prove the amount of its claimed loss. It will serve no useful purpose to repeat it here. Suffice it to say that we believe the trial justice was warranted in finding that the nature of plaintiff's evidence was not sufficient, and its method

of computation was not trustworthy enough, to prove the amount of the alleged loss by a fair preponderance of the evidence.

The plaintiff has failed to persuade us that the trial justice's findings as to the existence of a loss sustained through employee dishonesty, or the amount thereof, are clearly wrong or that he misconceived or overlooked any material evidence in making such findings.

In such circumstances his findings will not be disturbed by this court. *Jonette Jewelry Co.* v. *Liberty Mutual Insurance Co.*, 105 R. I. 308, 251 A.2d 521.

The appeal of the plaintiff is denied and dismissed, and the judgment is affirmed.

*Pucci, Zito & Goldin, J. Ronald Fishbein,* for plaintiff.

*Higgins, Cavanagh & Cooney, Joseph V. Cavanagh,* for defendant.