R. ROBERT POPEO, trustee, *vs.* LIBERTY MUTUAL INSURANCE COMPANY.

Middlesex. January 6, 1976. — March 1, 1976.

Present: HENNESSEY, C.J., REARDON, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Insurance,* Proof of loss.

In an action against an insurer to recover for a loss under a "Blanket Crime Policy," evidence that the insured's materials control manager had assisted in placing certain property in a locked storage area, that several months later he discovered some of the items missing, and that he computed the quantities and unit prices of the missing goods by reference to purchase orders, invoices and other documents was sufficient to permit recovery despite an inventory exclusion clause which precluded recovery where the proof of loss was dependent upon an inventory computation or a profit and loss computation. [783-785]

In an action against an insurer to recover for a loss under a "Blanket Crime Policy," evidence that certain property was stored in a locked area of a warehouse, to which only certain employees had access from time to time for the purpose of showing the goods to prospective customers, that some items were discovered missing by the materials control manager after several months, and that there were no signs of forced entry into the area warranted a finding that the insured had made reasonable proof of loss attributable to the dishonest acts of undesignated employees. [786]

CONTRACT. Writ in the District Court of Central Middlesex dated May 23, 1973.

Upon removal to the Superior Court, the action was heard by *J.P. Sullivan,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Roland I. Wood (Robert T. Nagle* with him) for the defendant.

*Sidney J. Dockser* for the plaintiff.

BRAUCHER, J. After a jury waived trial in the Superior Court, the plaintiff recovered judgment in the amount of his claim under a "Blanket Crime Policy" for a loss sustained through dishonest acts of employees. The insurer contends that the judge erred in ruling that there was sufficient evidence, other than "an inventory computation or a profit and loss computation," to satisfy § 2 (b) of the policy, the inventory exclusion clause, and § 4, the clause on "Loss Caused by Unidentifiable Employees."[1] We hold that there was no error.

We summarize the judge's findings and rulings. The plaintiff was appointed trustee of Viatron Computer Systems Corporation (Viatron) under c. 10 of the Bankruptcy Act, 11 U.S.C. § 501 et seq. (1970), on May 7, 1971. The policy in suit was in force from February to July 15, 1971. In February certain goods of Viatron were set aside as surplus, some of them in their original

---

[1] "Section 2. This policy does not apply: . . . (b) to loss, or to that part of any loss, as the case may be, the proof of which, either as to its factual existence or as to its amount, is dependent upon an inventory computation or a profit and loss computation; provided, however, that this paragraph shall not apply to loss of money, securities or other property which the insured can prove, through evidence wholly apart from such computations, ·is sustained by the insured through any fraudulent or dishonest act or acts committed by any one or more of the employees; . . ."

"Section 4. If a loss is alleged to have been caused by the fraud or dishonesty of any one or more of the employees and the insured shall be unable to designate the specific employee or employees causing such loss, the insured shall nevertheless have the benefit of Insuring Agreement I, subject to the provisions of Section 2 (b) of this policy, provided that the evidence submitted reasonably proves that the loss was in fact due to the fraud or dishonesty of one or more of the said employees, and provided, further, that the aggregate liability of the company for any such loss shall not exceed the total limit of liability."

factory-sealed cartons. They were segregated in certain rooms in a warehouse and the area was kept under lock and key. There were only two keys to the area, and only the trustee and certain employees had access to them. The area was opened from time to time by employees to show the goods to prospective customers. After the viewing, the area was again locked. There were no signs of a forced entry. The loss from the area of goods worth $34,796.04 was sustained through the dishonest acts committed by employees, and was covered by the policy.

In denying the insurer's requests for rulings that the evidence did not warrant a finding for the plaintiff, the judge stated that there was independent evidence in support of the plaintiff's claim, other than the use of inventory computation or profit and loss computation. The insurer appealed, and we ordered direct appellate review on our own motion.

Viatron's purchasing agent and materials control manager testified that he had assisted in placing the surplus goods in the storage area in February, that the goods were kept in cartons each of which was marked with the part number and quantity of its contents, and that in July the entire stock of certain types of capacitors and transistors was missing, as were a large number of resistors. From copies of purchase orders, invoices and other documents, he was able to state the quantities and unit prices of the missing goods. A large sale negotiated by him led to the discovery of the loss on July 15. None of the surplus goods was used by the corporation, and any other sales than the one he negotiated would have to be without his knowledge.

We were told in argument that § 2 (b), the inventory exclusion clause, began to be used in the 1950's and is now in general use throughout the United States. See Kurland, Claims for Inventory Shortage Resulting from Employee Dishonesty under Fidelity Insurance Bonds — A Present Appraisal, 33 Ins. Counsel J. 397 (1966). The

clause reflected a belief that proof of an inventory shortage does not establish either that there has been actual loss of goods or, in case of an actual loss, that it is due to employee dishonesty. The clause is designed to protect the insurer against claims based on erroneous or falsified computations. See *Dunlop Tire & Rubber Corp.* v. *Fidelity & Deposit Co.*, 479 F.2d 1243, 1246 (2d Cir. 1973).

The application of the clause seems clearest where inventories consisting of a variety of items are kept on a dollar basis and proof of the loss, its amount and its cause is dependent on a showing of a dollar shortage. "Inventory computation" in such a case arrives at an inventory figure by adding purchases to a beginning inventory and subtracting the cost of goods sold. See *Fort Smith Tobacco & Candy Co.* v. *American Guarantee & Liab. Ins. Co.*, 208 F. Supp. 244, 254 (W.D. Ark. 1962). Proof of loss by subtracting an actual inventory from such a computed inventory does not satisfy the clause unless there is independent evidence. *Gillette Co.* v. *Travelers Indem. Co.*, 365 F.2d 7, 8-9 (7th Cir. 1966). *United States Smelting Ref. & Mining Co.* v. *Aetna Cas. & Sur. Co.*, 372 F. Supp. 489, 494 (S.D. N.Y. 1974). *Gotcher Eng'r & Mfg. Co.* v. *United States Fidelity & Guar. Co.*, 193 So. 2d 115, 116 (Miss. 1966). *Locke Distrib. Co.* v. *Hartford Accident & Indem. Co.*, 407 S.W.2d 658, 670 (Mo. App. 1966). *Paramount Paper Prods. Co.* v. *Aetna Cas. & Sur. Co.*, 182 Neb. 828, 839 (1968). *Kernwood Mfg. Corp.* v. *Home Indem. Co.*, 65 Misc. 2d 354, 356-357 (N.Y. City Civ. Ct. 1970), aff'd 67 Misc. 2d 888 (N.Y. 1971). *Tri-Motors Sales, Inc.* v. *Travelers Indem. Co.*, 19 Wis. 2d 99, 111-112 (1963). Once there is independent proof of loss sustained through dishonest acts of employees, inventory computations are admissible as corroborative evidence. *Mapes Casino, Inc.* v. *Maryland Cas. Co.*, 290 F. Supp. 186, 193 (D. Nev. 1968). *Travelers Indem. Co.* v. *Davis Wholesale Drug Co.*, 234 So. 2d 604, 605 (Miss. 1970). *Hoboken Camera Center,*

*Inc.* v. *Hartford Accident & Indem. Co.*, 93 N.J. Super.
484, 499-500 (App. Div. 1967). There seems to be some
conflict in the authorities on the question whether in such
cases inventory computations standing alone can serve as
sufficient proof of the extent of loss. See *York Lumber
Co.* v. *Fidelity & Deposit Co.*, 331 F. Supp. 1131, 1132-
1133 (E.D. Pa. 1971), and cases cited; *Danal Jewelry Co.*
v. *Fireman's Fund Ins. Co.*, 107 R.I. 33, 37-39 (1970).

Unit-type or perpetual inventory records, consisting of
a list of particular items or types of items based on a
physical count, if honestly and accurately maintained,
have higher probative value than the usual computed
inventory, since they are less dependent on assumptions
or estimates of possibly debatable validity. *Hoboken
Camera Center, Inc.* v. *Hartford Accident & Indem.
Co., supra* at 496. Where the missing items are
identified from such records, it has been held that there is
no "inventory computation" within the meaning of the
inventory exclusion clause. *Sun Ins. Co.* v. *Cullum's
Men Shop, Inc.*, 331 F.2d 988, 991 (5th Cir. 1964).
*Atlanta Coca-Cola Bottling Co.* v. *Transamerica Ins.
Co.*, 61 F.R.D. 120, 124-125 (N.D. Ga. 1973). *Ken-
tuckiana Sales, Inc.* v. *Security Ins. Co.*, 394 S.W.2d
744, 749 (Ky. 1965).

The present case is somewhat different from those we
have cited. There is no direct evidence of acts of
employee dishonesty, but there is evidence that particular
items of property disappeared from a locked enclosure to
which only employees had access. That evidence did not
consist of an "inventory computation" but of testimony
by the materials control manager that he helped put the
property in the enclosure and that later it was not there.
If the owner of an automobile locks it in a garage and
later finds the garage empty, it would be an unwarranted
strain on the language to say that he had made an
"inventory computation." The dollar amount of loss was
computed, not from inventory records but from purchase
records.

The insurer also claims that the evidence did not satisfy the first proviso of § 4 of the policy, requiring evidence that "reasonably proves" that the loss was in fact caused by the fraud or dishonesty of undesignated employees. In *Dunlop Tire & Rubber Corp.* v. *Fidelity & Deposit Co.*, 479 F.2d 1243, 1246 (2d Cir. 1973), it is said that this requires more than "some independent evidence" but less than a prima facie case "as a condition to the use of inventory computations." We are unable to find any reference to "inventory computations" in § 4, but in any event we think the judge was warranted in finding that reasonable proof had been made without reference to inventory computations.

*Judgment affirmed.*