PARAMOUNT PAPER PRODUCTS COMPANY, INC., APPELLANT, v. AETNA CASUALTY & SURETY COMPANY, APPELLEE.

157 N. W. 2d 763

Filed March 29, 1968.  No. 36705.

Matthews, Kelley & Cannon, for appellant.

Cassem, Tierney, Adams & Henatsch and John R. Douglas, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

NEWTON, J.

This is an action on a blanket crime policy issued by defendant to plaintiff. As a part of the insuring agreement, the policy provides coverage as follows: "EMPLOYEE DISHONESTY COVERAGE. 1. Loss of Money, Securities and other property which the Insured shall sustain through any fraudulent or dishonest act or acts committed by any of the Employees, acting alone or in collusion with others." It also contains the following exclusion clause referred to as Section 2. "This Policy does not apply: * * * (b) to loss, or to that part of any loss, as the case may be, the proof of which, either as

to its factual existence or as to its amount, is dependent upon an inventory computation or a profit and loss computation; provided, however, that this paragraph shall not apply to loss of Money, Securities or other property which the Insured can prove, through evidence wholly apart from such computations, is sustained by the Insured through any fraudulent or dishonest act or acts committed by any one or more of the Employees; * * *."

At the conclusion of plaintiff's evidence, the trial court sustained defendant's motion to dismiss and plaintiff appeals.

The evidence indicates that plaintiff is in the printing business, its primary business being the making up and printing of labels of various types for which it uses rather specialized and expensive types of paper and tape. Officials in plaintiff's Los Angeles, California, plant became aware of what appeared to be too large a discrepancy existing between the amount of paper purchased and that used in the business. It then employed a private detective to work as an undercover man in the plant which resulted in the subsequent arrest and conviction of two of plaintiff's employees on charges of two thefts from plaintiff's paper and tape stock. All of the materials involved in the two incidents uncovered by the detective were recovered and no claim is made for the loss of such materials. Thereafter, plaintiff sought to ascertain, by means of inventory computations, the amount of any loss alleged to be attributable to theft by employees. An inventory was taken on May 31, 1965, and as a starting point, an inventory taken on October 31, 1964, was used. This is the period covered by the computations mentioned. The inventories of the stock were taken on a unit basis and then reduced to values in dollars and cents. The unit inventory taken October 31, 1964, was not available at the time of trial. The inventories, books, and accounts of plaintiff referred to in determining the amount of loss were checked by plaintiff's employees and partially by a certified public accountant

for purposes of verification. The accountant stated that figures used by him in making cost studies were compiled by the use of raw-material-usage figures obtained from the plaintiff's books; that such cost studies vary and are not absolute; and that this is true also of the material-usage figures similarly obtained. It was also conceded to be possible that loss of material could have been caused by "* * * union activities, deliberate delay, personal relations, theft and so forth, * * *." The evidence further discloses that there was a considerable waste in connection with the business in that the labels made up were in various sizes and shapes, were run off on large rolls of paper, and when cut out, left unused a considerable portion of such raw material. Also, there was waste in preparing the presses for each new run and high speed presses being used, if errors were made or the printing process was not adequate, a considerable volume of paper would be wasted before the error or failure to print properly was observed and corrected. Plaintiff's employees knew of no other instance of theft by employees other than the two incidents heretofore mentioned, resulting in the arrest and conviction of the two employees mentioned. In obtaining paper from the stockroom for printing purposes, the pressmen doing the work would go to the stockroom, obtain the paper required, and no check was made of paper so removed from the stockroom on such occasions.

Plaintiff contends that the exclusionary clause, in view of the proviso therein contained, must be construed to mean that although inventory computations cannot be used to prove the fact of loss until there has been independent evidence on that proposition, once the fact that loss by theft has been established, the amount of such loss may then be proved by an inventory computation. On the contrary, defendant contends that both the fact and the amount of the loss must be proved by evidence independent of an inventory computation. In order to resolve this question of interpretation, it would

be well to review the history of this clause and the available decisions interpreting it.

Difficulties have been encountered in claims against insurance companies on employee fidelity bonds for a considerable period of time. In cases where no direct or circumstantial evidence of specific losses or shortages or of employee dishonesty was available and it was necessary to rely upon abnormal inventory shortages, insurers were concerned with the uncertainty and unreliability of some inventory accounting procedures and the possibility that such inventory shortages could have been the result of factors other than employee infidelity. In an attempt to alleviate this situation, insurers inserted a clause in such policies requiring "conclusive proof." In view of the liberal interpretation placed upon the conclusive proof clause by the courts, this also was found to be unsatisfactory and the exclusionary clause which is the subject of discussion in the present case has become standard. See Hoboken Camera Center, Inc. v. Hartford Acc. & Ind. Co. (1967), 93 N. J. Super. 484, 226 A. 2d 439.

It appears that insurers wish to make it clear that there was no coverage for any loss based on inventory or profit and loss computations, to rule out a determination of the amount of loss by means of such computations, to limit coverage to losses definitely due to dishonesty, and to make it clear that coverage extended only to that part of any loss definitely proven to have resulted from dishonest acts. It further appears that insurers recognized the fact that inventory shortages could come about as the result of many conditions other than employee dishonesty. For example, such a shortage could result in instances where inadequate or erroneous records were kept, as the result of breakage, spillage, or waste, as the result of errors in measuring or counting, as the result of errors in recording or paying for goods, or as the result of theft by other than employees. There are many other factors besides those enumerated which could

contribute to inventory shortages. One common inventory practice is by stock records of goods on hand maintained on the basis of aggregate dollar value, calculations of sales records, taking into account the average market or mark-up used to determine the cost of goods sold, and the dollar value of the inventory which should be on hand. There is always a likelihood of some degree of estimation error in such a system as contrasted with a unit-basis inventory and accounting system which, if accurately maintained, being based on an actual accounting of specific items on hand and identification of items sold may be reasonably accurate, although even then the possibility remains of a dishonest or erroneous accounting of inventory. Inventory shortage exists when a physical inventory of goods taken on a unit basis is less than the amount shown on the books of the insured. In the present instance, the inventory was taken on a unit basis although partially used rolls of paper were inventoried by means of measurement and estimation. This was then reduced to a dollar value, the original unit value discarded and the dollar value thus arrived at was compared with the dollar value of goods sold. It is apparent that the exclusionary clause was designed for the purpose of preventing recovery on the basis of unreliable inventory computations which are subject to the many unreliable features above referred to and to forestall recovery except for losses shown with reasonable certainty to have resulted from the dishonest acts of employees and not from other causes.

There appear to be only a few cases dealing directly with the controversial clause herein. All are comparatively recent and will be taken up in chronological order.

In Fort Smith Tobacco & Candy Co. v. American Guar. & Liab. Ins. Co (1962), 208 F. Supp. 244, the court held that the exclusionary clause was not ambiguous; that the insured was bound by such clause and had the burden of proving a loss in conformity therewith; and that recovery could be had only on evidence wholly apart from

inventory or profit and loss computations which " 'reasonably proves that the loss was in fact due to the fraud or dishonesty of one or more of said employees, * * *.' " In this case, there was other evidence of employee dishonesty, but the court refused to permit the establishment of the amount of the alleged loss by proof of an inventory shortage and stated, in substance, that because some loss had been caused by employee dishonesty, any inference that the entire loss as shown by an inventory shortage was caused by employee dishonesty was not permissible, was too uncertain or speculative, and was based merely on conjecture or possibilities.

In Tri-Motors Sales, Inc. v. Travelers Ind. Co. (1963), 19 Wis. 2d 99, 119 N. W. 2d 327, the court held the exclusionary clause to be ambiguous and applied it only in regard to proof of the fact of loss but not in regard to the amount of loss. The inventory in this case was based upon a dollar rather than on a unit basis and it was conceded that there could be some variations in this type of computation. The court concluded that there could be two interpretations: (1) The words " 'as to its amount' " carry over into the proviso and prohibit the use of inventory computations, or (b), that such words do not carry over and on proof of some loss by theft, the insured could then prove the amount of loss by means of the computations mentioned in the clause. The court adopted the second interpretation, stating that the proviso was meaningless under the first interpretation and would permit only cumulative proof of loss by means of inventory computations.

In Mid-Continent Stores, Inc. v. Central Surety & Ins. Corp. (Mo., 1964), 377 S. W. 2d 567, the court held that the language used in the exclusionary clause was clear and unambiguous; the parties to the contract had a right to contract to such limitations or conditions of liability as they might agree upon; and the contract excluded any loss, the proof of which either as to its factual existence

or as to its amount was dependent upon an inventory or profit and loss computation.

The case of Sun Ins. Co. of New York v. Cullum's Men Shop, Inc. (1964, 5th Cir.), 331 F. 2d 988, dealt with the loss of certain men's suits. Definite evidence was produced of the theft of some suits, but plaintiff relied upon a unit-inventory system to show the amount of the loss. It appears that a swatch book was kept in which was entered the number, name of the manufacturer, the color, style, size, and cost of each suit, together with a swatch of the material of which the suit was made when available. Each suit coming into the store was entered in this manner in the swatch book and a corresponding number was entered on a tag attached to the sleeve of each suit. As the suits were sold, each tag would be removed and at the end of each business day, the suits indicated by the sleeve tags to have been sold were crossed out of the swatch book. To ascertain the extent of the loss, a check of the tags removed from the suits was made against the swatch book. In this instance, the court considered the evidence sufficiently reliable to permit recovery although stating that the system mentioned for ascertaining the loss did not constitute an inventory computation.

In the case of Anschutz & Associates v. Conley (1964), 74 N. M. 363, 393 P. 2d 710, the only question presented was whether or not, in view of the exclusionary clause, the insured received under the policy the coverage which he had requested. The court held that he did receive such coverage and that the exclusionary clause simply set out the acceptable means of proving a loss.

In Kentuckiana Sales, Inc. v. Security Ins. Co. of New Haven (Ky. App., 1965), 394 S. W. 2d 744, plaintiff operated a redemption center for trading stamps and sought to recover for a loss of merchandise and trading stamps. There was evidence of one theft by one employee of both merchandise and stamps, but this property was recovered. Insofar as the loss of merchandise

was concerned, plaintiff relied on an inventory computation. In regard to the amount of stamps lost, plaintiff relied upon a periodic checking of the stamps redeemed against the number canceled by means of perforations. The court refused to accept the inventory computation as proof of the loss of merchandise, ruling that the amount, as well as the fact of loss, must be established by other evidence, but once such evidence was produced, the inventory computation could then be made use of as supplemental or cumulative evidence of such loss. It did accept the evidence submitted in regard to the loss of trading stamps and held that this did not constitute an inventory computation.

In Gillette Co. v. Travelers Indemnity Co. (1966, 7th Cir.), 365 F. 2d 7, there was evidence of theft by an employee of certain merchandise which was recovered. Plaintiff sought to recover for other losses attributed to employee dishonesty, the only evidence of which either as to fact or amount, was arrived at by means of an inventory computation. Plaintiff claimed that the exclusionary clause was ambiguous and resulted, if strictly construed, in the practical nullification of the contract. Nevertheless, the court strictly construed the exclusionary clause. It was pointed out that since the only merchandise regarding which there was direct evidence of theft had been recovered; there was no proof of loss due to employee dishonesty either in fact or in regard to the amount except such as might be inferred by reason of an inventory computation and recovery was denied.

The case of Locke Distributing Co. v. Hartford Acc. & Indem. Co. (Mo., 1966), 407 S. W. 2d 658, dealt with an inventory shortage in a beer warehouse. There was no direct evidence of the theft of beer from the warehouse although there was evidence of theft of the company funds by an employee. The court ruled that inventory computations were admissible as evidence, but that this, in the absence of other evidence, was not competent proof of loss. The court stated that the words

"as to its amount" were clearly intended to be carried over into the proviso found in the exclusionary clause and prohibited proof of the amount of the loss by means of an inventory computation even though there was independent evidence of the act of stealing.

The last case dealing with the subject is that of Hoboken Camera Center, Inc. v. Hartford Acc. & Ind. Co., *supra*. The court arrived at the conclusion that public policy, as outlined in certain New Jersey decisions, would prohibit a strict interpretation of the exclusionary clause. The following excerpt serves to indicate the thinking and ruling of the court on this subject: "Such accommodation, in our judgment, should preclude recovery by the insureds under this bond if they had no proof whatever of an employee-connected loss other than inventory or profit and loss computations, no matter how reliable in the particular case. On the other hand, inventory records may by their very nature constitute inherently indispensable proof of an allowable claim under a fidelity bond in one or the other or both of two respects: (a) as the only available proof of the full amount of a loss, there being some appreciable proof from other facts or circumstances of a loss caused by employee-dishonesty; (b) as corroboration sufficient to make a case for the fact-finder of the fact of an employee-connected loss where independent proof thereof, considered alone, might be insubstantial. To deny an insured the right to adduce proof of inventory records for either of these purposes might in a particular case defeat justice by precluding recovery on a meritorious claim by use of the only proofs reasonably available to the insured and probative thereof. So to do would contravene public policy, not only in defeating the reasonable expectations of coverage of the purchaser of the insurance but also in allowing a private agreement to nullify the inherently probative effect of relevant evidence."

It will be observed that court decisions from other

jurisdictions cover a wide range. In some, the exclusionary clause has been strictly interpreted. In others, the clause has been held to be ambiguous and to permit of a more liberal construction. Still others have permitted recovery where the inventory computation was made upon a reasonably reliable unit basis although in such cases, the courts denied that the evidence actually constituted inventory computations, and finally, the Hoboken case is one in which the court refused to interpret the clause literally on the ground that it was contrary to public policy.

As heretofore mentioned, the exclusionary clause in its present form was adopted for the purpose of requiring *definite proof* of loss by reason of dishonest acts on the part of employees. It was necessary for the insurers to protect themselves against claims based upon questionable and uncertain inventory or profit and loss computations. It is apparent that there is no ambiguity existing by reason of the proviso contained in the exclusionary clause. The plain meaning of the language used definitely indicates that proof, other than that arrived at by means of an inventory or profit and loss computation, is required not only as to the fact of a loss, but also as to the amount of such loss although such computations are not forbidden as corroborative evidence. The exclusionary clause admittedly limits coverage under the policy but does not nullify it nor does it necessarily require that the thief be caught "red-handed" before recovery can be had. There are many instances in which losses by theft can be shown by other means. It will be noted that the exclusionary clause does not bar recovery based upon an inventory, but only upon an "inventory computation or profit and loss computation." The word computation, as defined in Webster's Third New International Dictionary, at page 468, means: "the act or action of computing: * * *." An inventory made upon a unit or physical basis comprises simply a list of merchandise or materials on hand and there is no computation or comput-

ing in regard thereto, it is simply an enumeration. See Black's Law Dictionary (4th Ed.) p. 959. On the other hand, an inventory taken and reduced to a dollars and cents basis does involve the act of computing and is a computation. It would, therefore, appear that the exclusionary clause does not bar an inventory made upon a unit basis, but does bar inventories which require computation to reduce them to some other basis, or, where when one inventory is compared with a later one, it is necessary to compute and allow for sales and purchases made in the interim. As noted before, insurers simply wish to require definite proof of losses due to employee dishonesty. Where employee dishonesty clearly exists, it would appear that a reasonably reliable inventory made upon a unit basis would serve to meet the purpose for which the exclusionary clause was included in the policy. It cannot be denied that the parties are free to contract on any basis agreed upon; that where employee dishonesty exists, an inference that all losses revealed by an inventory are attributable to employee dishonesty in view of the inherent uncertainties in such inventory computations are too uncertain and speculative in nature to provide a reliable basis for recovery; and that the parties are entitled to a strict or literal construction of the exclusionary clause.

In the present case, plaintiff had knowledge of only two thefts by employees and the merchandise lost as a result of these thefts was all recovered. Consequently, plaintiff has failed to prove by either direct or circumstantial evidence any loss whatsoever by reason of employee dishonesty. It has simply shown that such dishonesty had existed and, by inference, it seeks to attribute its entire loss revealed by an inventory computation to employee dishonesty. Here we are not dealing with a simple inventory or list of goods on hand, but with the conversion thereof into dollars and cents figures, and a comparison of two such inventories necessarily requiring a computation of purchases, sales, waste, etc.,

in the interim, in other words, with "an inventory computation" which is barred insofar as proof of loss is concerned by the exclusionary clause in the absence of other evidence of such loss.

The judgment of the district court was correct.

AFFIRMED.

SMITH and McCOWN, JJ., concurring in result.

The policy provision in our opinion prohibits proof by inventory records that are not trustworthy. An important circumstance is the degree of estimation involved in the inventory system. The probative value of unit-type or perpetual inventory records is ordinarily higher than that of records based chiefly on generalized estimates. The distinction between an "enumeration" and a "computation" of inventory shortage is subtle, productive of confusion, and unserviceable. We cannot formulate a single rule that will satisfactorily cover the innumerable variables of trustworthiness. We concur in the result. See, Hoboken Camera Center, Inc. v. Hartford Acc. & Ind. Co., 93 N. J. Super. 484, 226 A. 2d 439; Kurland, "Claims For Inventory Shortage Resulting From Employee Dishonesty under Fidelity Insurance Bonds—a Present Appraisal," 33 Ins. Counsel J. 397 (1966); Bunge, "Inventory Shortages," 20 Ins. Counsel J. 271 (1953).