**DUNLOP TIRE AND RUBBER COR-PORATION, Plaintiff-Appellant,**

v.

**FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Defendant-Appellee.**

**No. 626, Docket 72–2296.**

United States Court of Appeals,
Second Circuit.

Argued April 11, 1973.

Decided June 5, 1973.

Durham Housing Auth., 433 F.2d 998, 1002 (4th Cir. 1970); Escalera v. New

Alexander C. Cordes, Buffalo, N. Y. (Phillips, Lytle, Hitchcock, Blaine &

York City Housing Auth., 425 F.2d 853 (2d Cir. 1970).

Huber, Buffalo, N. Y., on the brief), for plaintiff-appellant.

Mark N. Turner, Buffalo, N. Y. (Brown, Kelly, Turner, Hassett & Leach, Buffalo, N. Y., on the brief), for defendant-appellee.

Before SMITH, HAYS and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge.

The essential issue on this appeal involves the application of the standard inventory exclusion clause in a fidelity insurance policy and bond to a claim for loss of property alleged to have been sustained by reason of fraudulent or dishonest acts of an unidentified employee of the insured.

Plaintiff Dunlop Tire and Rubber Corporation (Dunlop) brought this action in the New York Supreme Court, Erie County, in June 1970 to recover under a fidelity policy and bond issued by defendant Fidelity and Deposit Company of Maryland (Fidelity). The complaint alleged that a $57,002.50 loss of sporting goods from Dunlop's warehouse in Carlstadt, New Jersey, had been sustained in 1968 by reason of fraudulent or dishonest acts of an unidentified employee of Dunlop acting alone or in collusion with others; and that Fidelity had refused to indemnify Dunlop for the loss.

The action was removed to the District Court for the Western District of New York. After a nonjury trial before John T. Curtin, District Judge, the court filed an opinion on October 19, 1972 dismissing the complaint on the ground that Dunlop had failed to prove that the loss was sustained by reason of fraudulent or dishonest acts of Dunlop employees.

We affirm.

I.

The critical facts as found by the district court are largely undisputed.

Dunlop discovered the loss here involved on July 8, 1968 during an inventory by its employees. After comparing an actual physical count of goods on hand in its Carlstadt warehouse against its inventory records, it made a determination that the following items of sporting goods had disappeared from its warehouse between April 2, 1968 and July 8, 1968: 4,970 dozen golf balls; 820 dozen tennis balls; 114 golf clubs (woods); 127 golf clubs (irons); and 117 tennis frames and rackets. The total value of the lost property was estimated to be $57,002.50. The accuracy of the inventory and the determination of the quantity and type of goods lost is not challenged. The district court so found.

At the trial, no employee of Dunlop who was familiar with the daily routine of its sporting goods warehouse facilities at Carlstadt testified. Nor did Dunlop adduce evidence that any particular employee was responsible for the loss. Rather, it relied upon inventory records and other circumstantial evidence intended to show that only Dunlop employees could enter the area where the loss occurred.

For example, Harold Petnode, Operating Manager for the New York division of Dunlop, testified to the layout of the warehouse, its security system, and other relevant circumstances. Dunlop was the sole occupant of the Carlstadt warehouse. The warehouse contained its tire and sporting goods divisions. These were two independent units separated from each other by a cinder block wall but sharing a common office with connecting doors. There were locks on these connecting doors, as well as on the doors leading to the outside from each of the separate units. Inside the sporting goods unit, the goods that were lost were stored in a floor-to-ceiling locked wire cage.

The warehouse was operated only during the day. It was locked at night. During the day, only authorized Dunlop employees were allowed in the sporting goods area. Three or four such employees had keys to the wire cage during the day, but all keys were turned in to the sporting goods manager at night. It was not established what the manager did with the keys at night. No Dunlop employees were on the premises at night.

Night security was maintained by ADT[1] through the use of an alarm system with electric eye beams. ADT employees had access to the sporting goods area but not to the locked wire cage. The alarm system was activated at the end of each day by a Dunlop employee before he went off duty.

During the period of time that the loss occurred, no break-ins were reported by ADT, nor did anyone notice any physical evidence of burglary. After the loss was discovered, there was a substantial turnover of Dunlop personnel at its Carlstadt warehouse. Since that turnover, there were no appreciable shortages.

Dunlop concluded from these circumstances that the loss disclosed by its inventory computation was caused by dishonesty of its employees. It filed a claim under the Comprehensive Dishonesty, Disappearance and Destruction Policy and the Commercial Blanket Bond, both of which had been issued by Fidelity to Dunlop in 1966. The policy and bond each included five separate Insuring Agreements. Only Insuring Agreement I (Employee Dishonesty Coverage) in the policy and bond is here involved. Pursuant thereto, Fidelity bound itself to reimburse and indemnify Dunlop against loss of money and other property sustained through the fraudulent or dishonest act or acts of any of its employees, acting alone or in collusion with others. Under the "Conditions and Limitations" part of the Insuring Agreement, two sections, set forth in the margin of this opinion, bear directly on the issue here involved: Section 2(b), the Inventory Exclusion Clause;[2] and Section 4, the clause relating to Loss Caused By Unidentifiable Employees.[3]

Judge Curtin's well reasoned opinion, while accepting the accuracy of Dunlop's inventory and its determination of the quantity and type of goods lost, nevertheless held that the inventory, standing alone, was not sufficient to show that the loss was caused by any unlawful acts of Dunlop employees. He held that Dunlop's other circumstantial evidence was without probative force:

"Giving plaintiff every benefit of the facts and the law in this case, it is the court's belief that the circumstantial evidence produced was not sufficient to sustain plaintiff's burden. The plaintiff failed to show that no one else had the ability to enter the cage except its own employees. . . . Plaintiff has failed to rule out the possibility that ADT employees had access to the manager's keys and were able to enter the cage."

Although we affirm the district court's dismissal of the complaint for failure of proof, we do so on a slightly different

---

1. ADT is an abbreviation for American District Telephone Co., a well known supplier of electrical burglary protection devices, including central station alarm systems. See Brink's Inc. v. American District Telegraph Co., 413 F.2d 359, 360 (7 Cir. 1969); United States v. International Telephone & Telegraph Corp., 324 F.Supp. 19, 40–41 (D.Conn.1970), appeal dismissed, 404 U.S. 801 (1971).

2. "Section 2. This Policy does not apply:

    *      *      *

(b) under Insuring Agreement I, to loss, or to that part of any loss, as the case may be, the proof of which, either as to its factual existence or as to its amount, is dependent upon an inventory computation or a profit and loss computation; provided, however, that this paragraph shall not apply to loss of Money, Securities or other property which the Insured can prove, through evidence wholly apart from such computations, is sustained by the Insured through any fraudulent or dishonest act or acts committed by any one or more of the Employees; . . . . "

3. "Section 4. If a loss is alleged to have been caused by the fraud or dishonesty of any one or more of the Employees and the Insured shall be unable to designate the specific Employee or Employees causing such loss, the Insured shall nevertheless have the benefit of Insuring Agreement I, subject to the provisions of Section 2(b) of this Policy, provided that the evidence submitted reasonably proves that the loss was in fact due to the fraud or dishonesty of one or more of the said Employees, . . . . "

ground. We hold that since Dunlop failed to establish with evidence other than the inventory computation that a loss in fact was sustained as a result of employee dishonesty, its claim is excluded by Section 2(b) of the policy and bond.

## II.

The issue on appeal is whether Dunlop proved that it was entitled to recover under the policy and bond. Dunlop contends that it sustained its burden of proof by showing through its inventory computation that a loss of property was sustained and by showing through circumstantial evidence that this loss must have been caused by the dishonest acts of an employee or employees. Fidelity argues that, since Dunlop's claim is wholly dependent upon inventory computations to prove the existence of a loss and its amount, the claim is excluded by Section 2(b) of the policy and bond.

Section 2(b) has been a standard inventory exclusion provision of most fidelity policies and bonds for a number of years. It was designed to protect insurers against claims based on erroneous or falsified inventory or profit and loss computations. Paramount Paper Products Co. v. Aetna Casualty & Surety Co., 182 Neb. 828, 157 N.W.2d 763 (1968). Inventory records and other business records are less reliable than other evidence in proving that a loss of goods has been sustained or that a loss is attributable to employee dishonesty. Mid-Continent Stores v. Central Surety & Insurance Corp., 377 S.W.2d 567 (Ct. App., Mo.1964).

On its face, Section 2(b) appears to permit only one proper interpretation. The language preceding the first semicolon clearly indicates that a claim at all dependent upon an inventory or profit and loss computation [4] is to be excluded from the coverage of the policy.

The insured cannot depend upon such evidence to establish his prima facie case. The language following the first semicolon indicates, however, that where the insured has some independent evidence that a loss was caused by employee fraud or dishonesty, the inventory or profit and loss computation will be admitted as corroborative evidence to help the insured meet his burden of proof. But there must be some evidence "wholly apart from such computations" both as to the existence and amount of loss; otherwise the claim is excluded.

Section 4 of the "Conditions and Limitations" of the policy and bond, captioned "Loss Caused by Unidentifiable Employees", imposes a requirement in addition to that prescribed by Section 2(b) under certain circumstances. Where the insured claims that a loss was caused by employee dishonesty, but the dishonest employee or employees cannot be identified, the insured must submit evidence which "reasonably proves" that the loss was caused by the fraud or dishonesty of undesignated employees. Therefore, before inventory computations will be admitted as evidence in the insured's case-in-chief, it must be reasonably proven that a loss caused by employee dishonesty has been sustained. This requires more than "some independent evidence" but less than a prima facie case as a condition to the use of inventory computations.

The standard inventory exclusion clause has been the subject of considerable adjudication. In the typical case, the insured has evidence, other than inventory computations, of the factual existence of a loss due to employee dishonesty. The insured, however, does not have independent evidence indicating the full extent of the claimed loss. The courts are divided as to whether, under such circumstances, inventory computations may be introduced to prove the full amount of the loss.[5]

4. No profit and loss computation is here involved.

5. For decisions requiring independent evidence as to both the existence and amount

of the loss, see Gillette Company v. Travelers Indemnity Co., 365 F.2d 7 (7 Cir. 1966) ; Paramount Paper Products Co. v. Aetna Casualty and Surety Co., 182 Neb.

We need not decide, however, which of these lines of decisions is correct, for the issue before us is substantially different. Here, there is a complete absence of proof of employee dishonesty independent of the inventory computations. In support of its allegation that its loss was due to employee dishonesty, Dunlop has attempted to prove that only its employees could have taken the lost goods. It has adduced evidence to show that the lost property was separately stored and locked in a warehouse occupied only by it; that most of the articles were stored in a separately locked floor-to-ceiling cage; that nonemployees were not permitted access; that a burglar system was operational; that there was no physical evidence of burglary; and that since the turnover of employees following discovery of the loss, no similar losses have occurred.

This is circumstantial evidence that, if a loss in fact was sustained, Dunlop employees were the perpetrators. But this so-called evidence of employee dishonesty presupposes the factual existence of the loss. The evidence merely tends to foreclose the possibility of theft by persons other than employees. It does not prove the existence of any loss. There are no confessions, actual or implied, from employees who had been stealing goods. Dunlop has not shown suspicious circumstances indicating that employees were pilfering goods. The only evidence that a loss occurred at all is the inventory computations. Such computations alone are insufficient to prove the existence of the loss in light of the prohibition of the inventory exclusion clause.[6]

Every court that has been confronted with the situation presently before us has concluded that the claim must be excluded. The only reported New York decision [7] where this precise issue has been raised, so far as we know, is Kernwood Mfg. Corp. v. Home Indemnity Co., 65 Misc.2d 354, 317 N.Y.S.2d 113 (N.Y. City Civ.Ct.1970), aff'd, 67 Misc.2d 888, 326 N.Y.S.2d 682 (App.Term, 1st Dept. 1971). There the plaintiff's proof consisted of "showing limited access to the premises, the nature of its business, and that the loss was possible only by its employees or through their connivance." 65 Misc.2d at 356, 317 N.Y.S.2d at 115. The only evidence that a loss had occurred was provided by an inventory computation. The court granted defendant's motion to dismiss at the end of plaintiff's case on the ground that plaintiff had failed to prove a prima facie case:

"In a word, the plaintiff's cause of action 'is dependent upon an inventory computation', but the plaintiff did not offer any proof, 'through evidence

828, 157 N.W.2d 763 (1968) ; Locke Distributing Co. v. Hartford Accident and Indemnity Co., 407 S.W.2d 658 (Ct.App., Mo.1966) ; Mid-Continent Stores, Inc. v. Central Surety and Insurance Corp., 377 S.W.2d 567 (Ct.App., Mo.1964).

For decisions allowing the introduction of such computations as the only proof as to extent of loss, where there is some independent proof of employee dishonesty, see Sommer v. General Insurance Co. of America, 22 Ohio App.2d 149, 259 N.E.2d 142 (1970) ; American Fire and Casualty Co. v. Burchfield, 285 Ala. 358, 232 So.2d 606 (1970) ; Meyer Jewelry Co. v. General Insurance Co. of America, 422 S.W. 2d 617 (S.Ct., Mo.1968) ; Hoboken Camera Center, Inc. v. Hartford Accident and Indemnity Co., 93 N.J.Super. 484, 226 A. 2d 439 (1967) ; Tri-Motors Sales Inc. v. Travelers Indemnity Co., 19 Wis.2d 99, 119 N.W.2d 327 (1963).

6. Dunlop recovered against Fidelity in an earlier action in the New York Supreme Court, Erie County, on a claim involving a similar loss at its Los Angeles warehouse. Dunlop argues that, under the doctrine of collateral estoppel, Fidelity should be barred from relying on Section 2(b) as a defense. We agree with the district court's determination that in the earlier case there was substantial evidence that the manager of the warehouse had stolen or embezzled the goods from the warehouse. We hold that Dunlop's claim of collateral estoppel is wide of the mark.

7. No choice of law issue having been raised on this appeal, we assume that New York law applies. And since this issue has not received extensive consideration by the New York courts, we also look to other decisions for guidance.

wholly apart from such computations' that the loss was sustained 'through any fraudulent or dishonest act or acts committed by any one or more' of its employees." Id.

A case closely parallel to the instant one is York Lumber Co. v. Fidelity & Deposit Co. of Maryland, 331 F.Supp. 1131 (E.D.Pa.1971). There the lumber company's profit and loss computation showed a sudden and unexplained decrease in profits. This was traced to a decrease in profits on roofing shingles. After a private investigator was assigned to guard the shingles, profits returned to normal levels. At trial, York sought on these facts to prove that only an employee or employees could have caused the loss reflected on the books. The court, in noting that York had failed to produce any evidence independent of the profit and loss computation to show that a loss had been sustained, stated:

> "York's theory of employee dishonesty is premised upon the assumption that roofing shingles have been removed from the lumber yard. Such removal constitutes the factual existence of the loss. York, however, has presented only its own computations as evidence that roofing shingles have been stolen. Its allegations that only its employees had access to the roofing shingles and affidavits in support thereof merely attempt to exclude the possibility of theft by other individuals by creating a negative inference. *Such evidence of employee dishonesty, however, presupposes the factual existence of the loss and adds nothing by which its existence can be proved. And the computations alone, even if*

*accurate, are insufficient to prove the existence of the loss and support a claim under Section 2(b)."* 331 F. Supp. at 1133. (emphasis added).

The court therefore concluded that, because of the lack of independent evidence, York's claim was excluded by the terms of the insurance contract. Accord, Tri-Motors Sales v. Travelers Indemnity Co., 19 Wis.2d 99, 119 N.W.2d 327 (1963).[8]

Dunlop failed to adduce any evidence, aside from its inventory computation, that it sustained a loss through the fraudulent or dishonest acts of its employees. Since Section 2(b) of Insuring Agreement I clearly provides that the policy does not apply to losses whose existence are proven solely by inventory computations, Dunlop failed to prove a prima facie case.[9]

Affirmed.

---

8. See also Hoboken Camera Center, Inc. v. Hartford Accident and Indemnity Co., 93 N.J.Super. 484, 496, 226 A.2d 439, 447–48 (1967) :
   "The judicial problem, therefore, is one of fair accommodation of the general right of an insurer to fix his undertaking (citing cases) and that of the general public, in buying insurance containing frozen, unbargained-for policy limitations, to get the degree of coverage it reasonably envisages.

   Such accommodation, in our judgment, should preclude recovery by the insureds under this bond if they had no proof whatever of an employee-connected loss other than inventory or profit and loss computations, no matter how reliable in the particular case."

9. In light of our holding that Dunlop has not established a prima facie case, we do not reach the issue of the appropriate measure of damages.