**IN THE COURT OF APPEALS OF TENNESSEE**
**WESTERN SECTION AT JACKSON**

FILED

**November 8, 1995**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

**STRINGS & THINGS IN MEMPHIS,**
**INC.,**

    Plaintiff-Appellant,

Vs.

Shelby Equity No. 101098-1
C.A. No. 02A01-9408-CH-00195

**STATE AUTO INSURANCE COMPANIES,**

    Defendant-Appellee.

---

FROM THE CHANCERY COURT OF SHELBY COUNTY

THE HONORABLE NEAL SMALL, CHANCELLOR

Robert A. Wampler of Memphis
For Appellant

Kenneth R. Shuttleworth and Archie Sanders, III of Memphis
For Appellee

*VACATED, RENDERED AND REMANDED*

Opinion filed:

**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

**DAVID R. FARMER, JUDGE**

**BROOKS MCLEMORE, SPECIAL JUDGE**

This appeal involves a suit to recover on a policy of insurance covering employee dishonesty. Plaintiff, Strings & Things in Memphis, Inc., appeals from the judgment of the chancery court in a nonjury trial that dismissed its suit against defendant, State Auto Insurance Companies. The only issue on appeal is whether the evidence preponderates against the findings of the chancellor.

Plaintiff's complaint alleges that plaintiff maintained a policy of insurance with defendant for the period of April 1, 1990, to April 1, 1991. Under the "crime" coverage of the policy, defendant insured plaintiff against property loss caused by employee dishonesty, theft, disappearance, destruction, or robbery. The complaint avers that on or about July 1, 1990, one of plaintiff's employees discovered that insured property was missing from a secured warehouse area. Plaintiff alleges that the merchandise was stolen by an employee and that the total value of the merchandise exceeded $31,000.00. The complaint further avers that plaintiff fully complied with all provisions of the insurance policy, and therefore, plaintiff is entitled to a recovery under the policy.

Defendant's answer admits that the policy of insurance was valid and in effect at the time of the loss. However, defendant contends that the loss is excluded from coverage under Section 2(b) of the policy, because "computation of the loss was a result of inventory computation and/or profit and loss computation." Section 2(b) of the policy provides:

> This endorsement does not apply: . . . Under insuring agreement 1A or 1B to loss, or that part of any loss, as the case may be, the proof of which, either as to its factual existence or as to its amount, is dependent upon an inventory computation or a profit and loss computation.

Plaintiff's proof consisted of various exhibits as well as the testimony of Christopher John Lovell, a principal and manager of the plaintiff. We will briefly summarize this proof:

Plaintiff, Strings & Things in Memphis, Inc., located on Union Avenue in Memphis, Tennessee, is a retail seller of musical instruments and related equipment. The policy of insurance issued by defendant was obtained from defendant's agent, Jim Barkley, and provided coverage for employee dishonesty. Plaintiff utilized floor plan financing for a large part of its

2

inventory, and in April, 1990, it came to the attention of Lovell that some of the floor plan merchandise was missing and that there was no record of the sale of the merchandise. All of the missing items were identifiable by serial number, and a sale of any of the items would have been evidenced by a sales receipt. The items involved were kept in secured areas, accessible only by the owners of the business and two other employees.[1] There was no indication that there was any forcible entry to any of these locations. Plaintiff concluded that the two employees who had access to the secured areas were responsible for the theft, and plaintiff reassigned the employees to sales positions in which they would no longer have access to the vaulted areas.

On April 30, 1990, Lovell notified defendant's agent Barkley that there appeared to be an employee theft loss. Barkley advised Lovell to investigate the theft and to keep him updated as to the progress of the investigation. Lovell contacted Barkley numerous times regarding the theft, and in November, 1990, plaintiff's counsel forwarded Barkley written notice of the claim and an itemized list of the missing property. Plaintiff was furnished a proof of loss form which was completed and returned to defendant's agent. In January, 1991, defendant sent an investigator to take a statement from Lovell, and at that time the investigator also requested various documents from plaintiff. All of the items requested were furnished to defendant, even though defendant denied plaintiff's claim prior to receiving the requested material.

At trial, plaintiff introduced invoices, packing lists, sales receipts, and other documents into evidence to show that plaintiff had purchased and financed the missing items, and that the items had not been sold in the ordinary course of business. A trial, the only witness that testified on behalf of defendant was Lee Boyer Herrington, an employee of Equifax Services. Equifax was retained by the finance company to perform audits of plaintiff's floor plan merchandise. Ms. Herrington testified that her company had been performing audits at Strings & Things for a number of years prior to 1990, and that audits of Strings & Things were especially difficult due to the company's disorganized merchandise and "sloppy" record keeping. She stated that

---

[1]Some of the more expensive items were kept in an additional secured area, referred to as the "vault," which was located inside of another locked area.

plaintiff's employees had difficulty locating merchandise and were "lax" in recording serial numbers of inventory. She further stated that the first year in which Equifax audited Strings & Things, the vault was not kept locked, but thereafter plaintiff began locking it.     On July 30, 1990, an audit of Strings & Things revealed that there were fifteen less items of inventory on the floor than in the previous month. The plaintiff paid the inventory financer for eleven of the items and refused to pay for the remaining four claiming that they were stolen. Plaintiff's claim was denied by defendant in its letter of May 20, 1991, which states:

> Dear Mr. Lovell:
>
> We have conducted an investigation into the claim presented by your company, Strings & Things in Memphis. We have found the proof of the claim, both in terms of its factual existence and its amount, is based solely on the discrepancy between the sales records and the physical inventory taken by the floor plan company.
>
> Please refer to the MP 04 05 endorsement attached to your policy. On page 3 of 5, under EXCLUSIONS, section 2., paragraph (b), the following language is found:
>
>> This endorsement does not apply: (b) under Insuring Agreement 1A or 1B, to loss, or to that part of any loss, as the case may be, the proof of which, either as to its factual existence or to its amount, is dependent upon an inventory computation or a profit and loss computation;
>
> Therefore, we must respectfully deny your claim, as presented, and decline payment. If facts are developed which support the existence and the amount of the claim, separate form [sic] inventories, we will reconsider our position.

Subsequently, on October 23, 1991, Lovell wrote a letter to defendant's investigator once again explaining his claim. The letter states:

> Dear Mr. Adams:
>
> This letter is a supplement to the employee theft claim which was made by Strings & Things in Memphis, Inc. on November 12, 1990.
>
> The claim was made for employee theft which occurred on or immediately prior to July 1, 1990.
>
> The initial discovery of the theft was made by the undersigned. The discovery was made when the top half of a Roland KR 500

4

keyboard was discovered missing from the secured warehouse area. The bottom half of that keyboard was in its proper place. The keyboard is sold with both bottom and top half and is never separated for sale.

My investigation revealed that the particular missing item was on inventory as having been received from the distributor, but there was no sales ticket indicating a sale of that particular unit.

Later on the same day of that discovery, I checked both of the secure warehouse areas where these products are stored and it was discovered that other Roland products that had been received into inventory were also missing with no evidence of a sale.

It has been this company's custom to stock large quantities of Roland products due to that manufacturer's concession on floorplan interest. The corporation owns the building at 1492 Union Avenue and leases the ground floor of 1500 Union Avenue, the adjoining building. These buildings are separated by a small alley. There is a secured warehouse area in both buildings for the storage of inventory. Only one employee has access to these areas. That person is the Warehouse Manager.

Within 48 hours after the initial theft discovery, floorplan auditors from Textron came to do their monthly floorplan audit. This audit verified the Roland product that had been received but without evidence of sale [sic].

After the audit, I again began an in-depth investigation into this apparent employee theft. I obtained copies of all Roland packing slips and compared all of the Roland product received to our inventory and the Textron floorplan audit.

I then, again, reviewed all sales tickets, loaner lists, and any other document that would indicate the whereabouts of the missing Roland inventory.

Also at this time, I attempted to make a determination as to the employee or employees who were responsible for this theft loss. All of the missing Roland products were removed from the secured warehouse areas and not from display inventory.

During the time of this theft discovery, Craig Walker was the warehouse manager, who was the person entrusted with the key to the warehouse area.

Mr. Walker was hired on May 21, 1990 and was terminated on November 16, 1990.

After the employee learned of the investigation being undertaken to determine the person or persons responsible for the theft loss, Mr. Walker requested a transfer from his position as warehouse manager to the sales staff.

5

The reason for his continued employment was that I hoped he would disclose to some of the other employees his actual involvement in the theft.

Immediately before his termination, a background check of Mr. Walker revealed that he had been arrested on two separate occasions which involved theft.

The employee theft loss amount of $31,812.30 is not dependent upon an inventory shortage computation or a profit and loss computation, but is verified by actual documents of receipt and the lack of documents evidencing sales.

Mr. Walker was also a keyboard player and prior to his employment had been a customer seeking to purchase a Roland KR keyboard.

Mr. Walker was transferred to the sales staff on or about August 15, 1990, and all of the missing merchandise was noted missing between his date of employment and his date of transfer.

Quite frankly, I do not understand the company's denial of this claim as per your letter of May 20, 1991. I would like to reiterate that this claim is supported by actual product identification of the particular item missing and not by a general inventory shortage calculation.

I have previously furnished to you all documents supporting this claim.

After you have reviewed the enclosure, please contact my attorney.

At the conclusion of trial, the chancellor found that plaintiff had not carried its burden of proving that the loss of the inventory was due to employee theft. The chancellor believed that plaintiff did not take appropriate action after suspecting that a loss had occurred, because the plaintiff failed to confront the employees suspected of the theft, and failed to inform the police that the items were stolen. The chancellor also noted that Ms. Herrington had testified that the business was disorganized, and that plaintiff had difficulty locating merchandise. The chancellor also gave weight to Ms. Herrington's testimony that plaintiff's vault was not kept locked all of the time.

While we agree with the chancellor that plaintiff did not confront the suspected employees, that plaintiff did not inform the police of the loss, and that plaintiff did not operate an organized business, we have not been directed to any provision in the policy that would

prevent recovery because of plaintiff's failure to do these things. We must respectfully disagree with the chancellor's finding that Ms. Herrington testified that the vault was not kept locked all the time. Our reading of the record reveals that she testified that the vault was not locked during the first year that her company performed audits for plaintiff, but thereafter plaintiff kept the vault locked. As we read the record, the uncontroverted proof in the case is that plaintiff received various items of merchandise for the purpose of resale, that these items were kept in a locked area accessible by two employees, that there is no record that these items were ever sold in the ordinary course of business, and that these items were not found in the locked area where they should have been.

Defendant asserts that plaintiff's claim is excluded by the policy provisions set out above, because the factual existence of the loss and the amount of the loss are "dependent upon an inventory computation." The parties have cited no Tennessee authority dealing with this precise policy provision, nor has our research revealed any such authority. However, this provision has been dealt with by courts in other jurisdictions. In *Ace Wire & Cable Co., Inc. v. Aetna Casualty & Surety Co.*, 457 N.E.2d 761 (1983), the New York Court of Appeals considered a virtually identical policy provision. The Court stated:

> We hold that the phrase "inventory computation" is to be construed to proscribe proof of the fact or amount of loss through a generalized estimate, calculated, for example, from sales records and average markup, of what the dollar value of inventory on hand should be. It does not, however, preclude proof of the fact or amount of loss through inventory records (whether perpetual or periodically made) detailing the actual physical count of individually identifiable units such as are described in the Deutsch affidavits. That conclusion finds support in *Popeo v. Liberty Mut. Ins. Co.*, 369 Mass. 781, 785, 343 N.E.2d 417 ["Where the missing items are identified from such records (unit-type or perpetual inventory records), it has been held that there is no 'inventory computation' within the meaning of the inventory exclusion clause"]; *Paramount Paper Prods. Co. v. Aetna Cas. & Sur. Co.*, 182 Neb. 828, 839, 157 N.W.2d 763 ["the exclusionary clause does not bar an inventory made upon a unit basis, but does bar inventories which require computation to reduce them to some other basis, or, where when one inventory is compared with a later one, it is necessary to compute and allow for sales and purchases made in the interim"]; and *Sun Ins. Co. v. Cullum's Men Shop*, 331 F.2d 988, 991 (5th Cir. 1964) ["proof of the amount of the loss did not depend upon an inventory

computation . . . but on the contrary consisted of an enumeration of each missing item, suit by suit, based upon a check of the stock record, the swatch book, against the stock actually on hand"] (citations omitted).

*Ace Wire & Cable Co.*, 457 N.E.2d at 764-65.

The language in the policy in this case refers to an "inventory computation," which denotes some type of mathematical calculation. Considering the language used, we feel that the holding of the court in *Ace Wire* correctly construes the policy exclusion as not applying to a physical count of individually identifiable units of inventory. When dealing with individual identifiable units, there is no computation involved; the unit is simply present and accounted for, or it is missing. We think it is significant that the policy language excludes a loss based on an inventory computation rather than on an enumeration of missing items. In the case at bar, the evidence showing the purchase of the individual items and the absence of these items from inventory without evidence of a sale is not an inventory computation as contemplated by the policy.

The policy that the defendant issued to plaintiff provides that defendant will pay plaintiff for "loss of money, securities and other property which the insured shall sustain, . . . resulting directly from one or more fraudulent or dishonest acts committed by an employee, acting alone or in collusion with others." As stated above, the exclusion in Section 2(b) is not applicable because the proof of the loss is not dependent upon an inventory computation.

The policy also provides as follows:

LOSS CAUSED BY UNIDENTIFIABLE EMPLOYEE

Section 4. If a loss is alleged to have been caused by the fraud or dishonesty of any one or more of the Employees covered under Insurance Agreement 1A or 1B, as the case may be, and the Insured shall be unable to designate the specific Employee or Employees causing such loss, the Insured shall nevertheless have the benefit of such applicable Insuring Agreement subject to the provisions of Section 2 (b) of this endorsement **provided that the evidence submitted reasonably proves that the loss was in fact due to the fraud or dishonesty of one or more of the said Employees**, and provided, further, that the aggregate liability of the Company for any such loss shall not exceed the Limit of Liability applicable to such Insuring Agreement. (emphasis added).

8

In the instant case, plaintiff proved that the items in question were received by plaintiff and were not sold in the usual course of business. Plaintiff also proved that the items were kept in a locked area accessible by two employees other than the owners of the business. Although there is proof that plaintiff's business was somewhat unorganized, the fact remains that the items were purchased by plaintiff, were not sold by plaintiff, were kept under lock and key, were not found in inventory, and were accessible by only two employees, Under Section 4 of the policy, plaintiff is required to reasonably prove that the loss was due to the dishonesty of its employee or employees. We think plaintiff has reasonably proven that the loss was due to the dishonesty of one or both of the employees who had control of the keys where the insured property was located.

Plaintiff, in addition to seeking the value of the missing items, seeks to recover the interest paid on the floor plan financing of the items. We find nothing in the policy that provides coverage for such a loss. Plaintiff's proof shows an aggregate loss of merchandise in excess of the $25,000.00 contractual limit.

The judgment of the trial court is vacated. Judgment is entered for plaintiff against defendant in the amount of $25,000.00. The case is remanded to the trial court for such further proceedings as may be necessary, and costs of the appeal are assessed against the appellee.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**


_____
**DAVID R. FARMER, JUDGE**


_____
**BROOKS MCLEMORE,**
**SPECIAL JUDGE**